IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HUBER ENGINEERED WOODS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _______________ |
| | ) | |
| LOUISIANA-PACIFIC CORPORATION, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Huber Engineered Woods LLC ("HEW"), through its undersigned attorneys, for its Complaint against Defendant Louisiana-Pacific Corporation ("LP"), alleges as follows:

## THE PARTIES

1. HEW is a Delaware limited liability company with its principal place of business at Suite 300, One Resource Square, 10925 David Taylor Drive, Charlotte, North Carolina 28262.

2. LP is a Delaware corporation with its principal place of business at 414 Union Street, Suite 2000, Nashville, Tennessee 37219.

## JURISDICTION

3. This is an action for patent infringement arising under the Acts of Congress relating to patents, 35 U.S.C. §§ 271, *et seq*.

4. This Complaint contains counts alleging that LP directly infringes, and will continue to directly infringe, the asserted patents. Further, the counts of the Complaint allege that LP will contribute to the infringement of the asserted patents and will induce infringement of the asserted patents, and the counts seek a declaration of this indirect infringement by the Court. This Court has subject matter jurisdiction over the direct infringement allegations under 28 U.S.C. §§ 1331 and 1338(a). This Court has subject matter jurisdiction over the contributory

infringement and inducement of infringement allegations pursuant to 28 U.S.C. §§ 1331 and 1338(a) and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

5. This Court has personal jurisdiction over LP because LP is incorporated in Delaware.

6. Venue is proper in this District under 28 U.S.C. §1400(b) because LP is incorporated in this District.

## BACKGROUND

### The Patents In Suit

7. HEW develops and sells innovative engineered wood products and systems, including structural sheathing systems used in the construction of buildings under the Zip System® trademark. Among other things, HEW's structural sheathing systems provide structural support for buildings, while also providing air and water resistance that protects buildings from weather during construction. HEW owns several patents directed to such structural sheathing systems, including the patents at issue in this lawsuit, United States Patent Nos. 8,474,197; 9,010,044; 9,382,713; 9,546,479; 9,689,159; 9,695,588; 9,702,140 and 10,072,415 (collectively, "the Patents in Suit"). A photograph showing HEW's ZIP System® panels in combination with ZIP System™ tape (collectively, "ZIP System Sheathing") is below.



**Photograph of HEW's ZIP System Sheathing**

8. On July 2, 2013, the United States Patent and Trademark Office ("PTO") duly and legally issued United States Patent No. 8,474,197 ("the '197 patent"), titled Panel for Sheathing System and Method, to HEW. HEW is the owner of all right, title, and interest in the '197 patent. A true and correct copy of the '197 patent is attached hereto as Exhibit A.

9. On April 21, 2015, the PTO duly and legally issued United States Patent No. 9,010,044 ("the '044 patent"), titled Panel for Sheathing System and Method, to HEW. HEW is the owner of all right, title, and interest in the '044 patent. A true and correct copy of the '044 patent is attached hereto as Exhibit B.

10. On July 5, 2016, the PTO duly and legally issued United States Patent No. 9,382,713 ("the '713 patent"), titled Panel for Sheathing System and Method, to HEW. HEW is the owner of all right, title, and interest in the '713 patent. A true and correct copy of the '713 patent is attached hereto as Exhibit C.

11. On January 17, 2017, the PTO duly and legally issued United States Patent No. 9,546,479 ("the '479 patent"), titled Panel for Sheathing System and Method, to HEW. HEW is the owner of all right, title, and interest in the '479 patent. A true and correct copy of the '479 patent is attached hereto as Exhibit D.

12. On June 27, 2017, the PTO duly and legally issued United States Patent No. 9,689,159 ("the '159 patent"), titled Panel for Sheathing System and Method, to HEW. HEW is the owner of all right, title, and interest in the '159 patent. A true and correct copy of the '159 patent is attached hereto as Exhibit E.

13. On July 4, 2017, the PTO duly and legally issued United States Patent No. 9,695,588 ("the '588 patent"), titled Panel for Sheathing System and Method, to HEW. HEW is the owner of all right, title, and interest in the '588 patent. A true and correct copy of the '588 patent is attached hereto as Exhibit F.

14. On July 11, 2017, the PTO duly and legally issued United States Patent No. 9,702,140 ("the '140 patent"), titled Panel for Sheathing System and Method, to HEW. HEW is the owner of all right, title, and interest in the '140 patent. A true and correct copy of the '140 patent is attached hereto as Exhibit G.

15. On September 11, 2018, the PTO duly and legally issued United States Patent No. 10,072,415 ("the '415 patent"), titled Panel for Sheathing System and Method, to HEW. HEW is the owner of all right, title, and interest in the '415 patent. A true and correct copy of the '415 patent is attached hereto as Exhibit H.

16. The family of patents to which the Patents in Suit belong is based on applications filed beginning in February 2004. Each of the Patents in Suit claims priority to, among others, earlier-filed U.S. Patent No. 7,677,002 ("the '002 patent"), owned by HEW and filed on January

4, 2005. The '002 patent claims priority to U.S. provisional patent application nos. 60/547,029 and 60/547,031, both of which were filed on February 23, 2004. A true and correct copy of the '002 patent is attached hereto as Exhibit I.

17. The inventions claimed in the Patents in Suit were the result of years of research and development on structural sheathing systems by HEW. The inventions represent a leap forward in roof and/or wall structural sheathing system technology, solving several problems exhibited by other sheathing systems that rely upon house wrap or felt paper that is used with structural wood panels as part of the weatherization of buildings.

**HEW's ZIP System® Panels and ZIP System™ Tape**

18. HEW's commercial embodiments of the Patents in Suit are exemplified in its ZIP System® panels and the use of such panels in conjunction with ZIP System™ tape. ZIP System® panels are structural roof and/or wall panels with an integrated water-resistive and air barrier. ZIP System® panels in combination with ZIP System™ tape (collectively, "ZIP System Sheathing") streamline and simplify the installation and weatherization process associated with the building of structures such as single and multi-resident housing by achieving desired water resistance, air resistance, and water vapor permeability characteristics while eliminating the need to use house wrap or felt paper and/or eliminating the labor-intensive process of wrapping structures in house wrap or felt paper.

19. HEW's ZIP System Sheathing was first sold in about 2006. As a result of the patented technology, HEW developed a market for structural roof and/or wall panels or panel systems having an integrated barrier layer on the panels and using a seam sealing means, such as tape, to seal the joints between the panels. Since the ZIP System Sheathing launch, HEW has invested substantial amounts of time and resources developing and growing the market for

structural building sheathing systems with an integrated barrier layer and seam sealant, including marketing ZIP System® Sheathing and educating customers and those in the building industry regarding structural roof and/or wall sheathing systems, ZIP System Sheathing, and the benefits associated with ZIP System Sheathing. Indeed, ZIP System Sheathing has been the only successful structural roof and wall system in the market with an integrated barrier layer and seam sealing means with the above-described properties. The marketplace for structural roof and wall sheathing systems with an integrated barrier layer and seam sealing means, like ZIP System Sheathing, was created by HEW and, thus, has also grown as a result of HEW's efforts.

**The Infringing LP WeatherLogic™ Air & Water Barrier Panels and LP WeatherLogic™ Seam and Flashing Tape**

20. In light of the success achieved by ZIP System Sheathing and the growing market created by HEW, LP seeks to enter the market for structural building sheathing systems with an integrated barrier layer. Rather than put in the time and resources necessary to independently develop a sheathing product, like HEW did, LP instead has chosen to take advantage of the innovative development work performed by HEW and claimed in the Patents in Suit.

21. The "WeatherLogic System" is composed of LP WeatherLogic™ Air & Water Barrier panels ("WeatherLogic panels") and LP WeatherLogic™ Seam & Flashing Tape ("WeatherLogic tape"). The WeatherLogic panels are structural wall panels with an integrated water and air resistive barrier that is also water vapor permeable. (Exhibit J at 2-3.) The WeatherLogic panels are used to create a system of panels that sheath the exterior walls of a home, and the WeatherLogic tape is used to create a water-resistant seal over the joints between the WeatherLogic panels in the system. (*Id.* at 1-2.) Indeed, LP's marketing literature touts that the system creates a "[c]ontinuous exterior air/water barrier for a tight envelope" (Exhibit K at

1), and the FAQ sheet states that the panels are applied "like regular structural sheathing. The WeatherLogic tape is then applied to the seams to complete the system." (Exhibit L at 1.)

22. LP markets the WeatherLogic panels and WeatherLogic tape together and, upon information and belief, offers for sale and sells the WeatherLogic panels and WeatherLogic tape together in the United States. LP's WeatherLogic panels and tape are intended to be used together as a system and that system is intended to compete with HEW's ZIP System Sheathing.

23. The WeatherLogic System, at least when made, used, sold, or offered for sale in the United States, or imported into the United States, meets the limitations of the claims of the Patents in Suit. For example, LP's marketing literature for the WeatherLogic System shows that the WeatherLogic panels and WeatherLogic tape are meant for use together for externally enveloping a structure and/or constructing a building structure, just like HEW's ZIP System Sheathing. (Exhibit K at 1.) Indeed, a comparison of HEW's patented ZIP System Sheathing to the WeatherLogic System shows that LP copied the ZIP System Sheathing, only changing the color of the LP product:




**Comparison of HEW ZIP System Sheathing (left)**
**To the Infringing LP WeatherLogic System (right)**

24. LP's marketing literature describes the WeatherLogic System as providing air and water protection via an integrated weather-resistant barrier bonded to a structural panel, as claimed by the Patents in Suit:

**PRODUCT OVERVIEW**

LP WeatherLogic™ Air and Water Barrier is an integrated wall sheathing system that provides both air and water protection and increases the structural integrity of the house.

LP WeatherLogic engineered wood panel features an integrated bonded, weather-resistant overlay and sealed edges to reduce water intrusion. It has a higher perm rating than most housewrap (5.35 in ASTM E96 testing).

LP WeatherLogic seam and flashing tape uses a high-performance acrylic adhesive that is AAMA 711-13 approved. It will withstand temperature cycling and deliver consistent long-term protection.

(Exhibit K at 2.) And LP's FAQ sheet further confirms the purpose of the weather resistant barrier layer found on the paneling is to provide "air/water resistance plus vapor permeability . . . ." (Exhibit L at 1.)

25. Further, LP has made and used the WeatherLogic System, and, on information and belief, the WeatherLogic System is being offered for sale or sold in the United States. For example, LP assembled the WeatherLogic System and plans to display the WeatherLogic System as part of offering the system for sale to customers or distributors at the 2019 International Builders' Show in Las Vegas, Nevada on February 19-21, 2019. A picture of the WeatherLogic System displayed by LP at the 2019 International Builders' Show is shown below:




**Picture of WeatherLogic System at 2019 International Builders' Show**

**<u>COUNT I – PATENT INFRINGEMENT OF THE '197 PATENT</u>**

26. HEW incorporates Paragraphs 1-25 by reference as if set forth fully as part of this count.

27. LP has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least independent claim 1 of the '197 patent by making, using, selling, offering for sale, or importing its WeatherLogic System. Claim 1 of the '197 patent reads as follows:

> A panel system to externally envelope a structure, the system comprising:
>
> at least two adjacent lignocellulosic panels, each panel including an outer surface, an inner surface, and at least one edge extending therebetween, each panel aligned with its at least one edge proximate to the at least one edge of the adjacent panel and defining a longitudinal joint between the two adjacent panels;

a barrier layer secured to the outer surface or the inner surface of each panel, the barrier layer being substantially bulk water resistant and substantially water vapor permeable; and

a bulk water resistant edge sealant sealing the joint between the proximate edges of the two adjacent panels.

(Exhibit A at Col. 21:49-62.)

28. LP makes, uses, sells, offers for sale, or imports its WeatherLogic panels together with its WeatherLogic tape. Those panels (with edges sealed by tape) externally envelope a structure and are adjacent to other panels with longitudinal joints therebetween. (*See*, *supra*, ¶¶ 23, 25 and *infra* ¶ 36.)

29. The panels are also lignocellulosic as they are engineered wood, and they have a barrier layer secured to the surface of the panel that is bulk water resistant and substantially water-vapor permeable, as claimed by the ’197 patent:

**PRODUCT OVERVIEW**

The LP WeatherLogic™ panel is a weather-resistant overlay permanently bonded to an LP engineered wood structural panel. Edges are sealed to reduce water intrusion into the panel. Seams between panels are sealed with LP WeatherLogic Seam & Flashing Tape, a pressure-sensitive acrylic-based tape specially formulated to create a powerful water-resistant air barrier for the structure.

(Exhibit J at 2)

**1. What is the main purpose of a Weather Resistant Barrier?**
A Weather Resistant Barrier (WRB) needs to prevent air and water intrusion from the outside while also providing vapor permeability. During home construction, the interior of walls accumulate small amounts of moisture that become a gas (vapor). If the vapor remains in the walls, it can lead to rot and mold. Vapor permeability (or “breathability”) is a measure of the WRB’s ability to allow water vapor to pass through it. By providing air/water resistance plus vapor permeability, a WRB creates a tighter building envelope to ensure that the home is healthy, comfortable and energy-efficient.

(Exhibit L at 1.)

30. LP's WeatherLogic tape seals the joints and is water resistant: "Seams between panels are sealed with LP WeatherLogic Seam & Flashing Tape" which is "specially formulated to create a powerful water-resistant air barrier for the structure." (Exhibit J at 2.)

31. HEW has complied with the marking requirements of 35 U.S.C. § 287, giving LP constructive notice of the '197 patent.

32. LP is and has been on notice of the alleged infringement of the '197 patent at least as of the time HEW filed and provided notice of this Complaint. Further, on information and belief, LP was on notice of the Patents in Suit prior to the filing of this Complaint at least because those in the industry were aware that HEW previously asserted the'197 patent against Georgia-Pacific Wood Products LLC in *Huber Engineered Woods LLC v. Georgia-Pacific Wood Products LLC*, Civil Action No. 3:16-cv-399 (W.D.N.C.). Continuing to make, use, sell, offer for sale, or import its WeatherLogic System following notice of this lawsuit and its infringement of the '197 patent constitutes willful infringement.

33. LP will continue to contribute to the infringement of at least independent claims 1 and 12 of the '197 patent at least by offering to sell and selling the WeatherLogic System and through its related marketing, advertising, instructions, customer assistance, and selling activities which encourage, instruct, assist, and/or promote LP's customers to use the WeatherLogic System in an infringing manner. Claim 12 of the '197 patent reads as follows:

> A method of externally sheathing a building structure, the method comprising:
>
> obtaining at least two panel assemblies, each panel assembly including
> a lignocellulosic panel including
>
> an outer surface;
>
> an inner surface;
>
> and at least one edge; and

> a barrier layer secured to the outer surface of each panel, the barrier layer being substantially bulk water resistant and substantially water vapor permeable;
>
> positioning the panel assemblies adjacent to each other such that the respective edges are proximate to each other and define a longitudinal joint therebetween and such that the respective inner surfaces contact the structure;
>
> fastening each panel assembly to the structure; and
>
> sealing the joint between the edges of the panel.

(Exhibit A at Col. 22:25-42.)

34. The infringing WeatherLogic System comprises a material part of the claimed invention of the '197 patent. LP's marketing materials tout the advantages of its WeatherLogic panels having a water resistant and water vapor permeable barrier layer and of the WeatherLogic tape, evidencing their importance (taken individually and as a whole) as the components of the system offered for sale and sold by LP and their importance to the method of sheathing claimed in the '197 patent. (*See* Exhibit K at 1; *see also* Exhibits J, L.)

35. Further, the infringing WeatherLogic System is especially made and adapted for use in infringement of the '197 patent. And the intent of LP, as evidenced by the instructions and marketing materials, is that the WeatherLogic System be used in an infringing manner. (*See* Exhibits J-L.)

36. LP intends for and instructs that the panels be positioned adjacent to each other with the respective edges proximate to each other and with a longitudinal joint therebetween to externally sheath a building as called for by method claim 12:



* * *

## PANEL INSTALLATION




- Panels may be installed vertically or horizontally.
- Space all panel edges 1/8″.

(Exhibit J at 1, 5.)

37. LP intends and instructs that the weather-resistant barrier layer be facing outward and that each panel be fastened to the structure, again as called for by claim 12:

## INSTALLATION REQUIREMENTS

- Install LP WeatherLogic™ panels with the weather-resistant barrier facing outward.

* * *

- Attach panels to wall studs in accordance with project specifications. In lieu of project specifications, follow typical residential wall sheathing nailing:
  - Use minimum 6d common nails.
  - Space nails 6″ oc along panel edges and 12″ oc in the field of the panel.
  - Place nails 3/8″ from all panel edges.

(Exhibit J at 5.)

38. LP also intends and instructs that the joints between the edges of the panels be sealed using its WeatherLogic tape:

**PRODUCT OVERVIEW**

The LP WeatherLogic™ panel is a weather-resistant overlay permanently bonded to an LP engineered wood structural panel. Edges are sealed to reduce water intrusion into the panel. Seams between panels are sealed with LP WeatherLogic Seam & Flashing Tape, a pressure-sensitive acrylic-based tape specially formulated to create a powerful water-resistant air barrier for the structure.

* * *

## SEAM TAPE

- Use only LP WeatherLogic Seam & Flashing Tape to cover the seams between adjacent panel edges. Tape may be either the 3-3/4″ or 6″ wide tape.
- Clean all debris and foreign substances from protective barrier surface and fully dry surface immediately prior to taping.
- Center the tape over the panel seam. The tape may be off-center up to 1/2″.




- Install tape working from bottom of wall toward top, overlapping from above to create a shingle effect.

(Exhibit J at 2, 6.)

39. Moreover, the WeatherLogic System is not a staple article of commerce and has no substantial noninfringing use. LP's marketing materials and installation instructions state the WeatherLogic panels and WeatherLogic tape are intended to be used to provide a sheathing system with a water resistant and water vapor permeable barrier layer, wherein the system is sealed together by water resistant tape, as claimed in the claims of the '197 patent. (Exhibit J at 1-2; Exhibit K at 2.) Its marketing materials do not advertise or otherwise suggest that the WeatherLogic System is a staple article of commerce or has a substantial noninfringing use. (*See generally* Exhibit K.) In fact, when used as shown in LP's marketing materials (*see* Exhibit K-L) and when used as instructed by LP (*see* Exhibit J), the WeatherLogic System directly infringes claims of the '197 patent as described in 28-30, 36-38. No instructions provide for alternative uses of the WeatherLogic System other than for use in sheathing buildings. (*See generally* Exhibit J.)

40. On information and belief, LP's customers or customers of distributors selling LP's WeatherLogic System—namely home builders and others in the construction industry—will directly infringe the '197 patent by using the WeatherLogic System as part of a system or method that embodies the invention(s) of the '197 patent. LP knows and intends that its customers or customers of its distributors use (and, indeed, LP instructs customers to use) the WeatherLogic System in a manner that infringes the '197 patent. Indeed, LP's press release announcing the LP WeatherLogic System shows that LP intends for builders to install and use both the panels and tape as part of a system and in the manner claimed by the '197 patent:

> **LP WeatherLogic Air & Water Barrier**
>
> LP WeatherLogic Air & Water Barrier system gives builders an easy-to-install weather-resistant barrier (WRB) option that will help protect homes during construction, promote a clean jobsite and help secure energy efficiency for years to come. The system consists of two products: a 4-by-8 structural OSB with an integrated, weather-resistant overlay, and the LP WeatherLogic Seam & Flashing Tape, a specially formulated acrylic tape with squeegee for ease of installation.
>
> The panels install just like regular sheathing. After the panels are fastened, the seams are securely taped using an advanced pressure-sensitive acrylic tape featuring one of today's highest quality acrylic adhesives, which is AAMA 711-13 approved. The WeatherLogic Air & Water Barrier system provides builders assurance that the home has a continuous exterior air and water barrier for a tight building envelope that is also vapor permeable to allow moisture to escape.

(Exhibit M at 3.)

41. LP will induce infringement of at least independent claims 1 and 12 of the '197 patent by offering for sale and selling the WeatherLogic System directly to customers or through distributors to customers. LP has instructed and encouraged, and continues to instruct and encourage, its customers or customers of its distributors to use the WeatherLogic System as part of a panel system or method for externally sheathing a building structure in a manner that embodies the invention(s) claimed in the '197 patent. (*See*, *supra*, ¶¶ 28-30, 36-38.)

42. On information and belief, LP knows that its sale of the WeatherLogic System and instructions for use of the same will induce customers to directly infringe the '197 patent. LP's marketing materials and instructions for use of the WeatherLogic System in a manner claimed by the '197 patent demonstrate LP intends to induce customers to infringe the '197 patent. (*See*, *supra*, ¶¶ 28-30, 36-38.)

43. HEW has been damaged by LP's infringement of the '197 patent and will continue to be damaged in the future unless LP is permanently enjoined from infringing, directly or indirectly, the '197 patent.

**COUNT II – PATENT INFRINGEMENT OF THE '044 PATENT**

44. HEW incorporates Paragraphs 1-43 by reference as if set forth fully as part of this count.

45. LP has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least independent claim 1 of the '044 patent by making, using, selling, offering for sale, or importing its WeatherLogic System. Claim 1 of the '044 patent reads as follows:

> A panel system to externally envelope a structure, the system comprising:
>
> at least two adjacent lignocellulosic panels, each panel including an outer surface, an inner surface, and at least one edge extending therebetween, wherein each panel is aligned with its at least one edge proximate to the at least one edge of the adjacent panel to define a longitudinal joint between the two adjacent panels, and wherein the edges of the adjacent panels are substantially parallel to each other;
>
> a barrier layer secured to the outer surface or the inner surface of each panel, the barrier layer being substantially bulk water resistant and substantially water vapor permeable; and
>
> a bulk water resistant edge sealant sealing the joint between the proximate edges of the two adjacent panels, wherein the edge sealant includes strips of water-resistant tape having an adhesive layer and a backing,
>
> wherein the assembled panel system forms a sealed wall or roof of the structure without applying a separate moisture barrier layer of house wrap or felt paper.

(Exhibit B at Col. 22:43-63.)

46. LP makes, uses, sells, offers for sale, or imports its WeatherLogic panels together with its WeatherLogic tape. Those WeatherLogic panels (with edges sealed by tape) externally envelope a structure and are adjacent to other panels with longitudinal joints therebetween and with the panel edges being substantially parallel to each other. (*See, supra,* ¶¶ 23, 25 36.)

47. The panels are also lignocellulosic as they are engineered wood, and they have a barrier layer secured to the surface of the panel that is bulk water resistant and substantially water-vapor permeable, as claimed by the ’044 patent:

> **PRODUCT OVERVIEW**
>
> The LP WeatherLogic™ panel is a weather-resistant overlay permanently bonded to an LP engineered wood structural panel. Edges are sealed to reduce water intrusion into the panel. Seams between panels are sealed with LP WeatherLogic Seam & Flashing Tape, a pressure-sensitive acrylic-based tape specially formulated to create a powerful water-resistant air barrier for the structure.

(Exhibit J at 2.)

> **1. What is the main purpose of a Weather Resistant Barrier?**
>
> A Weather Resistant Barrier (WRB) needs to prevent air and water intrusion from the outside while also providing vapor permeability. During home construction, the interior of walls accumulate small amounts of moisture that become a gas (vapor). If the vapor remains in the walls, it can lead to rot and mold. Vapor permeability (or “breathability”) is a measure of the WRB’s ability to allow water vapor to pass through it. By providing air/water resistance plus vapor permeability, a WRB creates a tighter building envelope to ensure that the home is healthy, comfortable and energy-efficient.

(Exhibit L at 1.)

48. LP’s WeatherLogic tape seals the joints and is water resistant: “Seams between panels are sealed with LP WeatherLogic Seam & Flashing Tape” which is “specially formulated to create a powerful water-resistant air barrier for the structure.” (Exhibit J at 2.) On information and belief, that tape has an adhesive layer and a backing.

49. The WeatherLogic System is used to create a sealed wall of a structure without the use of house wrap or felt paper:

> **BUILDER ADVANTAGES**
>
> - Helps safeguard home from water intrusion while allowing moisture vapor to escape
> - Continuous exterior air/water barrier for a tight envelope

* * *

> **INSTALLATION**
>
> LP WeatherLogic installation is fast and hassle free. Panels are nailed to exterior studs, replacing standard wall sheathing and conventional wrapping methods. After installation, seams between panels are sealed with LP WeatherLogic seam and flashing tape. The provided squeegee should be used to ensure a tight seal.
>
> For full installation details, refer to the LP WeatherLogic Installation Instructions at LPCorp.com/WeatherLogic.

(Exhibit K at 1-2; *see also*, *supra*, ¶¶ 23, 25, 36 (showing that panel system is used to create wall structure).)

50. HEW has complied with the marking requirements of 35 U.S.C. § 287, giving LP constructive notice of the ’044 patent.

51. LP is and has been on notice of the alleged infringement of the ’044 patent at least as of the time HEW filed and provided notice of this Complaint. Further, on information and belief, LP was on notice of the Patents in Suit prior to the filing of this Complaint at least because those in the industry were aware that HEW previously asserted the ’044 patent against Georgia-Pacific Wood Products LLC in *Huber Engineered Woods LLC v. Georgia-Pacific Wood Products LLC*, Civil Action No. 3:16-cv-399 (W.D.N.C.). Continuing to make, use, sell, offer for sale, or import its WeatherLogic System following notice of this lawsuit and its infringement of the ’044 patent constitutes willful infringement.

52. LP will contribute to the infringement of at least independent claim 1 of the ’044 patent at least by offering to sell and selling the WeatherLogic System and through its related marketing, advertising, instructions, customer assistance, and selling activities which encourage, instruct, assist, and/or promote LP’s customers to use the WeatherLogic System in an infringing manner.

53. The infringing WeatherLogic System comprises a material part of the claimed invention of the ’044 patent. LP’s marketing materials tout the advantages of its WeatherLogic panels having a water resistant and water vapor permeable barrier layer, of the WeatherLogic

tape, and of the superior nature of the envelope created by the system, evidencing the importance of these feature and the purpose of the system. (*See* Exhibit K at 1; *see also* Exhibits J, L.)

54. Further, the infringing WeatherLogic System is especially made and adapted for use in infringement of the ’044 patent. And the intent of LP, as evidenced by the instructions and marketing materials, is that the WeatherLogic System be used in an infringing manner. (*See* Exhibits J-L.)

55. LP intends for and instructs that the panels be positioned adjacent to each other with the respective edges proximate to each other and with a longitudinal joint therebetween and with the panel edges being substantially parallel to each other, as called for by claim 1:




* * *

## PANEL INSTALLATION




- Panels may be installed vertically or horizontally.
- Space all panel edges 1/8˝.

(Exhibit J at 1, 5.)

56. LP intends and instructs that the edges of the panels be sealed using its water resistant WeatherLogic tape which, upon information and belief, has an adhesive layer and a backing:

**PRODUCT OVERVIEW**

The LP WeatherLogic™ panel is a weather-resistant overlay permanently bonded to an LP engineered wood structural panel. Edges are sealed to reduce water intrusion into the panel. Seams between panels are sealed with LP WeatherLogic Seam & Flashing Tape, a pressure-sensitive acrylic-based tape specially formulated to create a powerful water-resistant air barrier for the structure.

* * *

**SEAM TAPE**

- Use only LP WeatherLogic Seam & Flashing Tape to cover the seams between adjacent panel edges. Tape may be either the 3-3/4˝ or 6˝ wide tape.
- Clean all debris and foreign substances from protective barrier surface and fully dry surface immediately prior to taping.
- Center the tape over the panel seam. The tape may be off-center up to 1/2˝.




- Install tape working from bottom of wall toward top, overlapping from above to create a shingle effect.

(Exhibit J at 2, 6.)

57. LP intends and instructs that the panel system be used to create a sealed wall structure without use of house wrap or felt paper. (*See*, *supra*, ¶¶ 23, 25, 36, 49.)

58. Moreover, the WeatherLogic System is not a staple article of commerce and has no substantial noninfringing use. LP's marketing materials and installation instructions state the WeatherLogic panels and WeatherLogic tape are intended to be used to provide a sheathing system with a water resistant and water vapor permeable barrier layer, wherein the system is sealed together by water resistant tape, as claimed in the claims of the '044 patent. (Exhibit J at 1-2; Exhibit K at 2.) Its marketing materials do not advertise or otherwise suggest that the WeatherLogic System is a staple article of commerce or has a substantial noninfringing use. (*See generally* Exhibit K.) In fact, when used as shown in LP's marketing materials (*see* Exhibit K-L) and when used as instructed by LP (*see* Exhibit J), the WeatherLogic System directly infringes claims of the '044 patent as described in paragraphs 46-49, 55-57. No instructions provide for alternative uses of the WeatherLogic System other than for use in sheathing buildings. (*See generally* Exhibit J.)

59. On information and belief, LP's customers or customers of distributors selling LP's WeatherLogic System—namely home builders and others in the construction industry—will directly infringe the '044 patent by using the WeatherLogic System as part of a system that embodies the invention(s) of the '044 patent. LP knows and intends that its customers or customers of its distributors use (and, indeed, LP instructs customers to use) the WeatherLogic System in a manner that infringes the '044 patent. Indeed, LP's press release announcing the LP WeatherLogic System shows that LP intends for builders to install and use both the panels and tape as part of a system and in the manner claimed by the '044 patent:

> **LP WeatherLogic Air & Water Barrier**
>
> LP WeatherLogic Air & Water Barrier system gives builders an easy-to-install weather-resistant barrier (WRB) option that will help protect homes during construction, promote a clean jobsite and help secure energy efficiency for years to come. The system consists of two products: a 4-by-8 structural OSB with an integrated, weather-resistant overlay, and the LP WeatherLogic Seam & Flashing Tape, a specially formulated acrylic tape with squeegee for ease of installation.
>
> The panels install just like regular sheathing. After the panels are fastened, the seams are securely taped using an advanced pressure-sensitive acrylic tape featuring one of today's highest quality acrylic adhesives, which is AAMA 711-13 approved. The WeatherLogic Air & Water Barrier system provides builders assurance that the home has a continuous exterior air and water barrier for a tight building envelope that is also vapor permeable to allow moisture to escape.

(Exhibit M at 3.)

60. LP will induce infringement of at least independent claim 1 of the '044 patent at least by offering for sale and selling the WeatherLogic System directly to customers or through distributors to customers. LP has instructed and encouraged, and continues to instruct and encourage, its customers or customers of its distributors to use the WeatherLogic System as a panel system for externally sheathing a building structure and creating a sealed wall in a manner that embodies the invention(s) claimed in the '044 patent. (*See*, *supra*, ¶¶ 55-57, 59.)

61. On information and belief, LP knows that its sale of the WeatherLogic System and instructions for use of the same will induce customers to directly infringe the '044 patent.

LP's marketing materials and instructions for use of the WeatherLogic System in a manner claimed by the '044 patent demonstrate LP intends to induce customers to infringe the '044 patent. (*See*, *supra*, ¶¶ 55-57, 59.)

62. HEW has been damaged by LP's infringement of the '044 patent and will continue to be damaged in the future unless LP is permanently enjoined from infringing, directly or indirectly, the '044 patent.

**COUNT III – PATENT INFRINGEMENT OF THE '713 PATENT**

63. HEW incorporates Paragraphs 1-62 by reference as if set forth fully as part of this count.

64. LP has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least independent claim 1 of the '713 patent by making, using, selling, offering for sale, or importing its WeatherLogic System. Claim 1 of the '713 patent reads as follows:

> A panel system to externally envelope a structure, the system comprising:
>
> at least two adjacent lignocellulosic panels, each panel including an outer surface, an inner surface, and at least one edge extending therebetween, wherein each panel is aligned with its at least one edge proximate to the at least one edge of the adjacent panel to define a longitudinal joint between the two adjacent panels, and wherein the edges of the adjacent panels are substantially parallel to each other;
>
> a barrier layer secured to the outer surface or the inner surface of each panel, the barrier layer being substantially bulk water resistant and substantially water vapor permeable, the barrier layer having an outer surface that is textured; and
>
> a bulk water resistant edge sealant sealing the joint between the proximate edges of the two adjacent panels, wherein the edge sealant includes strips of water-resistant tape having an adhesive layer and a backing, wherein the panel includes alignment guides for positioning of the water-resistant tape during installation,
>
> wherein the assembled panel system forms a sealed wall or roof of the structure without applying a separate moisture barrier layer of house wrap or felt paper.

(Exhibit C at Col. 22:1-26.)

65. LP makes, uses, sells, offers for sale or imports its WeatherLogic panels together with its WeatherLogic tape. Those panels (with edges sealed by tape) externally envelope a structure and are adjacent to other panels with longitudinal joints therebetween and with the edges of the adjacent panels being substantially parallel to each other. (*See, supra,* ¶¶ 23, 25 36.)

66. The panels are also lignocellulosic as they are engineered wood, and they have a barrier layer secured to the surface of the panel that is bulk water resistant and substantially water-vapor permeable, as claimed by the ’713 patent. (*See, supra,* ¶ 29.) That barrier layer has an outer surface that is textured:




(Exhibit J at 7.)

67. LP’s WeatherLogic tape seals the joints and is water resistant: “Seams between panels are sealed with LP WeatherLogic Seam & Flashing Tape” which is “specially formulated to create a powerful water-resistant air barrier for the structure.” (Exhibit J at 2.) Upon information and belief that tape has an adhesive layer and a backing.

68. The WeatherLogic panels also provide alignment guides for positioning the tape as shown in the above image in paragraph 66.

69. The WeatherLogic System is used to create a sealed wall structure without the use of house wrap or felt paper. (*See, supra,* ¶¶ 23, 25, 36, 49.)

70. HEW has complied with the marking requirements of 35 U.S.C. § 287, giving LP constructive notice of the ’713 patent.

71. LP is and has been on notice of the alleged infringement of the ’713 patent at least as of the time HEW filed and provided notice of this Complaint. Further, on information and belief, LP was on notice of the Patents in Suit prior to the filing of this Complaint at least because those in the industry were aware that HEW previously asserted the related ’197 and ’044 patents against Georgia-Pacific Wood Products LLC in *Huber Engineered Woods LLC v. Georgia-Pacific Wood Products LLC*, Civil Action No. 3:16-cv-399 (W.D.N.C.). Continuing to make, use, sell, offer for sale, or import its WeatherLogic System following notice of this lawsuit and its infringement of the ’713 patent constitutes willful infringement.

72. LP will contribute to the infringement of at least independent claim 1 of the ’713 patent by offering to sell and selling the WeatherLogic System and through its related marketing, advertising, instructions, customer assistance, and selling activities which encourage, instruct, assist, and/or promote LP’s customers to use the WeatherLogic System in an infringing manner.

73. The infringing WeatherLogic System comprises a material part of the claimed invention of the ’713 patent. LP’s marketing materials tout the advantages of its WeatherLogic panels having a water resistant and water vapor permeable barrier layer, of the WeatherLogic tape, and of the superior nature of the envelope created by the system, evidencing the importance of these feature and the purpose of the system. (*See* Exhibit K at 1; *see also* Exhibits J, L.)

74. Further, the infringing WeatherLogic System is especially made and adapted for use in infringement of the '713 patent. And the intent of LP, as evidenced by the instructions and marketing materials, is that the WeatherLogic System be used in an infringing manner. (*See* Exhibits J-L.)

75. LP intends for and instructs that the panels be positioned adjacent to each other with the respective edges proximate to each other, with a longitudinal joint therebetween, and with the edge of the panels being substantially parallel, as called for by claim 1. (*See, supra,* ¶¶ 55.)

76. LP intends and instructs that the edges of the panels be sealed using its water resistant WeatherLogic tape which, upon information and belief, has an adhesive layer and a backing. (*See, supra,* ¶ 56.)

77. LP intends and instructs that the panel system be used to create a sealed wall structure without use of house wrap or felt paper. (*See*, *supra*, ¶¶ 23, 25, 36, 49.)

78. Moreover, the WeatherLogic System is not a staple article of commerce and has no substantial noninfringing use. LP's marketing materials and installation instructions state the WeatherLogic panels and WeatherLogic tape are intended to be used to provide a sheathing system with a water resistant and water vapor permeable barrier layer, wherein the system is sealed together by water resistant tape, as claimed in the claims of the '713 patent. (Exhibit J at 1-2; Exhibit K at 2.) Its marketing materials do not advertise or otherwise suggest that the WeatherLogic System is a staple article of commerce or has a substantial noninfringing use. (*See generally* Exhibit K.) In fact, when used as shown in LP's marketing materials (*see* Exhibit K-L) and when used as instructed by LP (*see* Exhibit J), the WeatherLogic System directly infringes claims of the '713 patent as described in paragraphs 65-69, 75-77. No instructions

provide for alternative uses of the WeatherLogic System other than for use in sheathing buildings. (*See generally* Exhibit J.)

79. On information and belief, LP's customers or customers of distributors selling LP's WeatherLogic System—namely home builders and others in the construction industry—will directly infringe the '713 patent by using the WeatherLogic System as part of a system that embodies the invention(s) of the '713patent. LP knows and intends that its customers or customers of its distributors use (and, indeed, LP instructs customers to use) the WeatherLogic System in a manner that infringes the '713 patent. Indeed, LP's press release announcing the LP WeatherLogic System shows that LP intends for builders to install and use both the panels and tape as part of a system. (Exhibit M at 3.)

80. LP will induce infringement of at least independent claim 1 of the '713 patent by offering for sale and selling the WeatherLogic System directly to customers or through distributors to customers. LP has instructed and encouraged, and continues to instruct and encourage, its customers or customers of its distributors to use the WeatherLogic System as a panel system for externally sheathing a building structure and creating a sealed wall in a manner that embodies the invention(s) claimed in the '713 patent. (*See*, *supra*, ¶¶ 75-77.)

81. On information and belief, LP knows that its sale of the WeatherLogic System and instructions for use of the same will induce customers to directly infringe the '713 patent. LP's marketing materials and instructions for use of the WeatherLogic System in a manner claimed by the '713 patent demonstrate LP intends to induce customers to infringe the '713 patent. (*See*, *supra*, ¶¶ 75-77, 79.)

82. HEW has been damaged by LP's infringement of the '713 patent and will continue to be damaged in the future unless LP is permanently enjoined from infringing, directly or indirectly, the '713 patent.

**COUNT IV – PATENT INFRINGEMENT OF THE '479 PATENT**

83. HEW incorporates Paragraphs 1-82 by reference as if set forth fully as part of this count.

84. LP has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least independent claim 1 of the '479 patent by making, using, selling, offering for sale, or importing its WeatherLogic System. Claim 1 of the '479 patent reads as follows:

> A panelized sheathing system for external walls of a building structure, the system comprising:
>
> at least two adjacent structural wall panels, each panel including an outer surface, an inner surface, and at least one edge extending therebetween, each panel aligned with its at least one edge proximate to the at least one edge of the adjacent panel and defining a joint between the two adjacent panels;
>
> a barrier layer secured to the outer surface of each panel, the barrier layer being bulk water resistant and water vapor permeable; and
>
> a bulk water resistant sealant sealing the joint between the proximate edges of the two adjacent panels.

(Exhibit D at Col. 22:6-18.)

85. LP makes, uses, sells, offers for sale, or imports its WeatherLogic panels together with its WeatherLogic tape. Those panels are structural. (Exhibit J at 2 ("The LP WeatherLogic panel is a weather-resistant overlay permanently bonded to an LP engineered wood **structural** panel.") (emphasis added).)

86. The panels (with edges sealed by tape) form an external wall and are adjacent to other panels with joints therebetween. (*See, supra,* ¶¶ 23, 25, 36, 38.)

87. The panels also have a barrier layer secured to the surface of the panel that is bulk water resistant and substantially water-vapor permeable, as claimed by the ’479 patent. (*See, supra,* ¶ 29.)

88. LP’s WeatherLogic tape seals the joints and is water resistant: “Seams between panels are sealed with LP WeatherLogic Seam & Flashing Tape” which is “specially formulated to create a powerful water-resistant air barrier for the structure.” (Exhibit J at 2.)

89. HEW has complied with the marking requirements of 35 U.S.C. § 287, giving LP constructive notice of the ’479 patent.

90. LP is and has been on notice of the alleged infringement of the ’479 patent at least as of the time HEW filed and provided notice of this Complaint. Further, on information and belief, LP was on notice of the Patents in Suit prior to the filing of this Complaint at least because those in the industry were aware that HEW previously asserted the related ’197 and ’044 patents against Georgia-Pacific Wood Products LLC in *Huber Engineered Woods LLC v. Georgia-Pacific Wood Products LLC*, Civil Action No. 3:16-cv-399 (W.D.N.C.). Continuing to make, use, sell, offer for sale, or import its WeatherLogic System following notice of this lawsuit and its infringement of the ’479 patent constitutes willful infringement.

91. LP will contribute to the infringement of at least independent claims 1 and 11 of the ’479 patent by offering to sell and selling the WeatherLogic System and through its related marketing, advertising, instructions, customer assistance, and selling activities which encourage, instruct, assist, and/or promote LP’s customers to use the WeatherLogic System in an infringing manner. Claim 11 of the ‘’479 patent reads as follows:

> A method of sheathing external walls of a building structure, the method comprising:
>
> positioning at least two wall panel assemblies adjacent to each other, each panel assembly including:
>
> a structural wall panel including an outer surface, an inner surface, and at least one edge; and
>
> a barrier layer secured to the outer surface of each panel, the barrier layer being bulk water resistant and water vapor permeable,
>
> wherein the respective edges of the adjacent at least two wall panel assemblies are proximate to each other and define a joint therebetween and such that the respective inner surfaces contact the structure;
>
> fastening each panel assembly to the structure; and
>
> sealing the joint between the edges of the panel.

(Exhibit D at Col. 22:49-63.)

92. The infringing WeatherLogic System comprises a material part of the claimed invention of the ’479 patent. LP’s marketing materials tout the advantages of its WeatherLogic panels having a water resistant and water vapor permeable barrier layer and of the WeatherLogic tape, evidencing their importance (taken individually and as a whole) as the components of the system offered for sale and sold by LP and claimed by the ’479 patent. (*See* Exhibit K at 1; *see also* Exhibits J, L.)

93. Further, the infringing WeatherLogic System is especially made and adapted for use in infringement of the ’479 patent. And the intent of LP, as evidenced by the instructions and marketing materials, is that the WeatherLogic System be used in an infringing manner. (*See* Exhibits J-L.)

94. LP intends for and instructs that the panels be positioned adjacent to each other with the respective edges proximate to each other and with a joint therebetween as called for by claim 1. (*See, supra,* ¶ 23, 25, 36, 55.)

95. LP intends and instructs that the edges of the panels be sealed using its WeatherLogic tape to form an external wall. (*See* Exhibit J at 1-2, 6.)

96. Moreover, the WeatherLogic System is not a staple article of commerce and has no substantial noninfringing use. LP's marketing materials and installation instructions state the WeatherLogic panels and WeatherLogic tape are intended to be used to provide a sheathing system with a water resistant and water vapor permeable barrier layer, wherein the system is sealed together by water resistant tape, as claimed in the claims of the '479 patent. (Exhibit J at 1-2; Exhibit K at 2.) Its marketing materials do not advertise or otherwise suggest that the WeatherLogic System is a staple article of commerce or has a substantial noninfringing use. (*See generally* Exhibit K.) In fact, when used as shown in LP's marketing materials (*see* Exhibit K-L) and when used as instructed by LP (*see* Exhibit J), the WeatherLogic System directly infringes claims of the '479 patent as described in paragraphs 85-88, 94-95. No instructions provide for alternative uses of the WeatherLogic System other than for use in sheathing buildings. (*See generally* Exhibit J.)

97. On information and belief, LP's customers or customers of distributors selling LP's WeatherLogic System—namely home builders and others in the construction industry—will directly infringe the '479 patent by using the WeatherLogic System in a system that embodies the invention(s) of the '479 patent. LP knows and intends that its customers or customers of its distributors use (and, indeed, LP instructs customers to use) the WeatherLogic System in a manner that infringes the '479 patent. Indeed, LP's press release announcing the LP

WeatherLogic System shows that LP intends for builders to install and use both the panels and tape together as part of a system. (Exhibit M at 3.)

98. LP will induce infringement of at least independent claims 1 and 11 of the ’479 patent by offering for sale or selling the WeatherLogic System directly to customers or through distributors to customers. LP has instructed and encouraged, and continues to instruct and encourage, its customers or customers of its distributors to use the WeatherLogic System as a panel system for creating external walls of building structures in a manner that embodies the invention(s) claimed in the ’479 patent. (*See*, *supra*, ¶¶ 94-95.)

99. On information and belief, LP knows that its sale of the WeatherLogic System and instructions for use of the same will induce customers to directly infringe the ’479 patent. LP’s marketing materials and instructions for use of the WeatherLogic System in a manner claimed by the ’479 patent demonstrate LP intends to induce customers to infringe the ’479 patent. (*See*, *supra*, ¶¶ 94-95, 97.)

100. HEW has been damaged by LP’s infringement of the ’479 and will continue to be damaged in the future unless LP is permanently enjoined from infringing, directly or indirectly, the ’479 patent.

**COUNT V – PATENT INFRINGEMENT OF THE ’159 PATENT**

101. HEW incorporates Paragraphs 1-100 by reference as if set forth fully as part of this count.

102. LP has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least independent claim 1 of the ’159 patent by making, using, selling, offering for sale, or importing its WeatherLogic System. Claim 1 of the ’159 patent reads as follows:

> A panel system capable of covering at least a portion of a building frame structure, the system comprising:
>
> at least two structural panels, a first panel including an outer surface, an inner surface, and at least one edge extending therebetween, the first panel capable of aligning with its at least one edge proximate to at least one edge of a second panel, and capable of defining a joint between the first panel and the second panel;
>
> a bulk water resistant and water vapor permeable barrier layer secured to the outer surface of the first panel and the second panel; and
>
> a bulk water resistant seam sealant capable of sealing the joint between the proximate edges of the first panel and the second panel.

(Exhibit E at 24:18-31.)

103. LP makes, uses, sells, offers for sale, or imports its WeatherLogic panels together with its WeatherLogic tape. Those panels are structural. (Exhibit J at 2 ("The LP WeatherLogic panel is a weather-resistant overlay permanently bonded to an LP engineered wood **structural** panel.") (emphasis added).) They are also capable of covering at least a portion of a building frame structure and are aligned with the edges of the panels proximate to each other and with a joint between the panels as called for in claim 1 of the '159 patent. (*See, supra,* ¶¶ 23, 25, 36, 55.)

104. The panels also have a barrier layer secured to the outer surface of the panel that is bulk water resistant and substantially water-vapor permeable, as claimed by the '159 patent. (*See, supra,* ¶ 29.)

105. LP's WeatherLogic tape seals the joints and is water resistant: "Seams between panels are sealed with LP WeatherLogic Seam & Flashing Tape" which is "specially formulated to create a powerful water-resistant air barrier for the structure." (Exhibit J at 2.)

106. HEW has complied with the marking requirements of 35 U.S.C. § 287, giving LP constructive notice of the '159 patent.

107. LP is and has been on notice of the alleged infringement of the ’159 patent at least as of the time HEW filed and provided a copy of this Complaint. Further, on information and belief, LP was on notice of the Patents in Suit prior to the filing of this Complaint at least because those in the industry were aware that HEW previously asserted the related ’197 and ’044 patents against Georgia-Pacific Wood Products LLC in *Huber Engineered Woods LLC v. Georgia-Pacific Wood Products LLC*, Civil Action No. 3:16-cv-399 (W.D.N.C.). Continuing to make, use, sell, offer for sale, or import its WeatherLogic System following notice of this lawsuit and its infringement of the ’159 patent constitutes willful infringement.

108. LP will contribute to the infringement of at least independent claim 1 of the ’159 patent by selling or offering to sell the WeatherLogic System and through its related marketing, advertising, instructions, customer assistance, and selling activities which encourage, instruct, assist, and/or promote LP’s customers to use the WeatherLogic System in an infringing manner.

109. The infringing WeatherLogic System comprises a material part of the claimed invention of the ’159 patent. LP’s marketing materials tout the advantages of its WeatherLogic panels having a water resistant and water vapor permeable barrier layer and of the WeatherLogic tape, evidencing their importance (taken individually and as a whole) as the components of the system offered for sale and sold by LP and claimed by the ’159 patent. (*See* Exhibit K at 1; *see also* Exhibits J, L.)

110. Further, the infringing WeatherLogic System is especially made and adapted for use in infringement of the ’159 patent. The intent of LP, as evidenced by the instructions and marketing materials, is that the WeatherLogic System be used in an infringing manner. (*See* Exhibits J-L.)

111. LP intends for and instructs that the panels be positioned adjacent to each other with the respective edges of the panels proximate to each other and with a joint between the panels. (*See, supra,* ¶¶ 23, 25, 36, 55.)

112. LP intends and instructs that the edges of the panels be sealed using its WeatherLogic tape and, that in doing so, the panel and tape system would cover at least a portion of a building frame structure as called for by claim 1. (*See* Exhibit J at 1-2, 6.)

113. Moreover, the WeatherLogic System is not a staple article of commerce and has no substantial noninfringing use. LP's marketing materials and installation instructions state the WeatherLogic panels and WeatherLogic tape are intended to be used as a sheathing system to cover a building frame structure with a water resistant and water vapor permeable barrier layer, wherein the system is sealed together by water resistant tape, as claimed in the claims of the '159 patent. (Exhibit J at 1-2; Exhibit K at 2.) Its marketing materials do not advertise or otherwise suggest that the WeatherLogic System is a staple article of commerce or has a substantial noninfringing use. (*See generally* Exhibit K.) In fact, when used as shown in LP's marketing materials (*see* Exhibit K-L) and when used as instructed by LP (*see* Exhibit J), the WeatherLogic System directly infringes claims of the '159 patent as described in paragraphs 103-105, 111-112. No instructions provide for alternative uses of the WeatherLogic System other than for use in sheathing buildings. (*See generally* Exhibit J.)

114. On information and belief, LP's customers or customers of distributors selling LP's WeatherLogic System—namely home builders and others in the construction industry—will directly infringe the '159 patent by using the WeatherLogic System in a system to cover at least a portion of a building frame structure in a manner that embodies the invention(s) of the '159 patent. LP knows and intends that its customers or customers of its distributors use (and,

indeed, LP instructs customers to use) the WeatherLogic System in a manner that infringes the ’159 patent. (*See, supra,* ¶¶ 109-113.)

115. LP will induce infringement of at least independent claim 1 of the ’159 patent by offering for sale and selling the WeatherLogic System directly to customers or through distributors to customers. LP has instructed and encouraged, and continues to instruct and encourage, its customers or customers of its distributors to use the WeatherLogic System as a panel system for covering at least a portion of building frame structures in a manner that embodies the invention(s) claimed in the ’159 patent. (*See*, *supra*, ¶¶ 111-112.)

116. On information and belief, LP knows that its sale of the WeatherLogic System and instructions for use of the same will induce customers to directly infringe the ’159 patent. LP’s marketing materials and instructions for use of the WeatherLogic System in a manner claimed by the ’159 patent demonstrate LP intends to induce customers to infringe the ’159 patent. (*See*, *supra*, ¶¶ 109-113.)

117. HEW has been damaged by LP’s infringement of the ’159 patent and will continue to be damaged in the future unless LP is permanently enjoined from infringing, directly or indirectly, the ’159 patent.

**COUNT VI – PATENT INFRINGEMENT OF THE ’588 PATENT**

118. HEW incorporates Paragraphs 1-117 by reference as if set forth fully as part of this count.

119. LP has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least independent claim 10 of the ’588 patent by making, using, selling, offering for sale, or importing its WeatherLogic System. Claim 10 of the ’588 patent reads as follows:

> A building structure comprising:
>
> a frame structure;
>
> a plurality of adjacent oriented strand board (OSB) panels fastened to the frame structure, each OSB panel comprising a barrier layer secured to an external facing surface of each OSB panel; and
>
> a tape sealing a joint between the OSB panels;
> wherein:
>
> each OSB panel with the secured barrier layer has a water vapor transmission rate from about 0.7 to about 7 grams/$m^2$/24 hr, as determined by ASTM E96 procedure A (73° F.-50% RH); and/or
>
> each OSB panel with the secured barrier layer has a water vapor permeance from about 0.1 to about 12 perms, as determined by ASTM E96 procedure B (73° F.-50% RH).

(Exhibit F at Col. 24:1-15.)

120. LP makes, uses, sells, offers for sale, or imports its WeatherLogic panels together with its WeatherLogic tape. Those WeatherLogic panels, made of oriented strand board, are capable of being fastened to at least a portion of a building frame structure and are aligned with the edges of the panels proximate to each other and with a joint between the panels, as called for in claim 10 of the ’588 patent. (*See, supra,* ¶¶ 23, 25, 36, 55.) Indeed, LP assembled the panels on a building structure at the 2019 International Builders’ Show, as discussed in Paragraph 25.

121. The panels also have a barrier layer secured to the outer surface of the panel that has a water vapor permeance in the range of about 0.1 to about 12 perms, as determined by ASTM E96 procedure B. (*See, supra,* ¶ 29; *see also* Exhibit K at 2.)

122. LP’s WeatherLogic tape seals the joints between the WeatherLogic panels: “Seams between panels are sealed with LP WeatherLogic Seam & Flashing Tape” which is “specially formulated to create a powerful water-resistant air barrier for the structure.” (Exhibit J at 2.)

123. HEW has complied with the marking requirements of 35 U.S.C. § 287, giving LP constructive notice of the ’588 patent.

124. LP is and has been on notice of the alleged infringement of the ’588 patent at least as of the time HEW filed and provided a copy of this Complaint. Further, on information and belief, LP was on notice of the Patents in Suit prior to the filing of this Complaint at least because those in the industry were aware that HEW previously asserted the related ’197 and ’044 patents against Georgia-Pacific Wood Products LLC in *Huber Engineered Woods LLC v. Georgia-Pacific Wood Products LLC*, Civil Action No. 3:16-cv-399 (W.D.N.C.). Continuing to make, use, sell, or offer for sale its WeatherLogic System following notice of this lawsuit and its infringement of the ’588 patent constitutes willful infringement.

125. LP will contribute to the infringement of at least independent claim 10 of the ’588 patent at least by offering to sell and selling the WeatherLogic System and through its related marketing, advertising, instructions, customer assistance, and selling activities which encourage, instruct, assist, and/or promote LP’s customers to use the WeatherLogic System to construct a building structure, as claimed in the ’588 patent.

126. The infringing WeatherLogic System is especially made and adapted for use in infringement of the ’588 patent. And the intent of LP, as evidenced by the instructions and marketing materials, is that the WeatherLogic System be used in an infringing manner. (*See* Exhibits J-L.)

127. LP intends and instructs that the panels be OSB panels that are used in conjunction with a frame structure and that are fastened to that frame structure:

**LP WeatherLogic Air & Water Barrier**

LP WeatherLogic Air & Water Barrier system gives builders an easy-to-install weather-resistant barrier (WRB) option that will help protect homes during construction, promote a clean jobsite and help secure energy efficiency for years to come. The system consists of two products: a 4-by-8 structural OSB with an integrated, weather-resistant overlay, and the LP WeatherLogic Seam & Flashing Tape, a specially formulated acrylic tape with squeegee for ease of installation.

(Exhibit M at 3)

- Attach panels to wall studs in accordance with project specifications. In lieu of project specifications, follow typical residential wall sheathing nailing:
  - Use minimum 6d common nails.
  - Space nails 6˝ oc along panel edges and 12˝ oc in the field of the panel.
  - Place nails 3/8˝ from all panel edges.

(Exhibit J at 5; *see also* ¶¶ 23, 25.)

128. LP intends and instructs that the panels be positioned adjacent to each other. (*See*, *supra*, ¶¶ 23, 25, 36, 55.)

129. LP intends and instructs that the edges of the panels be sealed using its WeatherLogic tape. (*See* Exhibit J at 2.)

130. The WeatherLogic panels that LP encourages and instructs its customers or customers of distributors to use when constructing a building structure have a barrier layer secured to the outer surface of the panel that is bulk water resistant and substantially water-vapor permeable, as claimed by the '588 patent. (*See*, *supra*, ¶ 29.)

131. And, as called for by claim 10, that panel with barrier layer has a water vapor permeance from about 0.1 to about 12 perms, as determined by ASTM E96 procedure B:

| PROPERTY | REFERENCE TEST | TEST RESULTS |
|---|---|---|
| Performance category | PS 2 | 7/16, 15/32 |
| Nominal length and width | PS 2 | 47 7/8" x 95 7/8" +/- 1/16" |
| Water-vapor transmission | ASTM E96 – Method B | 5.35 perms |

(Exhibit K at 2)

**2. What is a "perm"?**
A "perm" is short for permeability which is a measure of the rate of moisture vapor transmission through a material. Today's building codes require a perm rating of 5 or higher. LP WeatherLogic™ has a 5.35 perm rating in ASTM E96 testing.

(Exhibit L.)

132. The infringing WeatherLogic System comprises a material part of the claimed invention of the '588 patent. LP's marketing materials tout the advantages of its WeatherLogic panels having a water resistant and water vapor permeable barrier layer and of the WeatherLogic tape, evidencing their importance (taken individually and as a whole) as the components of the system offered for sale and sold by LP, used to create the building structure, and claimed by the '588 patent. (*See* Exhibit K at 1; *see also* Exhibits J, L.)

133. Moreover, the WeatherLogic System is not a staple article of commerce and has no substantial noninfringing use. LP's marketing materials and installation instructions show the WeatherLogic panels and WeatherLogic tape are intended to be used to create a building structure using panels with a water resistant and water vapor permeable barrier layer, wherein the system is sealed together by water resistant tape, as claimed in the claims of the '588 patent. (Exhibit J at 1-2; Exhibit K at 2.) Its marketing materials do not advertise or otherwise suggest that the WeatherLogic System is a staple article of commerce or has a substantial noninfringing use. (*See generally* Exhibit K.) In fact, when used as shown in LP's marketing materials (*see* Exhibit K-L) and when used as instructed by LP (*see* Exhibit L), the WeatherLogic System directly infringes claims of the '588 patent as described in paragraphs 119-124. No instructions provide for alternative uses of the WeatherLogic System other than for use in sheathing buildings to create a building structure. (*See generally* Exhibit J.)

134. On information and belief, LP's customers or customers of distributors selling LP's WeatherLogic System—namely home builders and others in the construction industry—

will directly infringe the ’588 patent by using the WeatherLogic System to construct a building frame structure in a manner that embodies the invention(s) of the ’588 patent. LP knows and intends that its customers or customers of its distributors use (and, indeed, LP instructs customers to use) the WeatherLogic System in a manner that infringes the ’588 patent. (*See, supra,* ¶¶ 127-130.)

135. LP will induce infringement of at least independent claim 10 of the ’588 patent by offering for sale and selling the WeatherLogic System directly to customers or through distributors to customers and through LP’s related marketing, advertising, instructions, customer assistance, and selling activities. LP has instructed and encouraged, and continues to instruct and encourage, its customers or customers of its distributors to use the WeatherLogic System to create a building structure in a manner that embodies the invention(s) claimed in the ’588 patent. (*See*, *supra*, ¶¶ 127-130.)

136. On information and belief, LP knows that its sale of the WeatherLogic System and instructions for use of the same will induce customers to directly infringe the ’588 patent. LP’s marketing materials and instructions for use of the WeatherLogic System in a manner claimed by the ’588 patent demonstrate LP intends to induce customers to infringe the ’588 patent. (*See*, *supra*, ¶¶ 127-130.)

137. HEW has been damaged by LP’s infringement of the ’588 patent and will continue to be damaged in the future unless LP is permanently enjoined from infringing, directly or indirectly, the ’588 patent.

## COUNT VII – PATENT INFRINGEMENT OF THE ’140 PATENT

138. HEW incorporates Paragraphs 1-137 by reference as if set forth fully as part of this count.

139. LP has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least independent claim 1 of the ’140 patent by making, using, selling, offering for sale, or importing its WeatherLogic System. Claim 1 of the ’140 patent reads as follows:

> A method for constructing a building structure, the method comprising:
>
> (a) fastening a first structural panel to a frame structure, wherein the first structural panel comprises a bulk water resistant and water vapor permeable barrier layer secured to an external facing surface of the first structural panel;
>
> (b) fastening a second structural panel to the frame structure and adjacent the first structural panel; wherein the second structural panel comprises a bulk water resistant and water vapor permeable barrier layer secured to an external facing surface of the second structural panel; and
>
> (c) applying a bulk water resistant seam sealant for sealing a joint formed between the first structural panel and the second structural panel.

(Exhibit G at 23:21-36.)

140. LP makes, uses, sells, offers for sale, or imports its WeatherLogic panels together with its WeatherLogic tape. Those WeatherLogic panels are capable of being fastened to at least a portion of a building frame structure and are aligned with the edges of the panels proximate to each other and with a joint between the panels, as called for in claim 1 of the ’140 patent. (*See, supra,* ¶¶ 23, 25, 36, 55.) Indeed, LP assembled the panels on a building structure at the 2019 International Builders’ Show, as discussed in Paragraph 25.

141. The panels also have a bulk water resistant and water vapor permeable barrier layer secured to the outer surface of the panel. (*See, supra,* ¶ 29.)

142. LP’s WeatherLogic tape seals the joints between the WeatherLogic panels, and that tape is bulk water resistant: “Seams between panels are sealed with LP WeatherLogic Seam

& Flashing Tape" which is "specially formulated to create a powerful water-resistant air barrier for the structure." (Exhibit J at 2.)

143. LP will contribute to the infringement of at least independent claim 1 of the '140 patent by offering to sell and selling the WeatherLogic System and through its related marketing, advertising, instructions, customer assistance, and selling activities which encourage, instruct, assist, and/or promote LP's customers to use the WeatherLogic System to construct a building structure via the methods claimed in the '140 patent.

144. The infringing WeatherLogic System is especially made and adapted for use in the methods covered by the '140 patent. The intent of LP, as evidenced by the instructions and marketing materials, is that the WeatherLogic System be used in an infringing manner. (*See* Exhibits J-L.)

145. LP's WeatherLogic panels are structural and include a bulk water resistant and water vapor permeable barrier layer. (Exhibit J at 2; Exhibit L at 1.)

146. LP intends and instructs that the panels be fastened to a frame structure. (*See, supra,* ¶ 23, 25, 36, 37.)

147. LP intends and instructs that the panels be positioned adjacent to each other and that they be used for construction of a building structure. (*See, supra,* ¶ 23, 25, 36, 37, 55.)

148. LP intends and instructs that the edges of the panels be sealed using its WeatherLogic tape which is bulk water resistant. (Exhibit J at 2.)

149. The infringing WeatherLogic System comprises a material part of the claimed invention of the '140 patent. LP's marketing materials tout the advantages of its WeatherLogic panels having a water resistant and water vapor permeable barrier layer and of the WeatherLogic

tape, evidencing their importance (taken individually and as a whole) in the method encouraged by LP and claimed by the ’140 patent. (*See* Exhibit K at 1; *see also* Exhibits J, L.)

150. Moreover, the WeatherLogic System is not a staple article of commerce and has no substantial noninfringing use. LP’s marketing materials and installation instructions show the WeatherLogic panels and WeatherLogic tape are intended to be used to construct a building structure using panels with a water resistant and water vapor permeable barrier layer, wherein the system is sealed together by water resistant tape, in a manner claimed in the ’140 patent. (Exhibit J at 1-2; Exhibit K at 2.) Its marketing materials do not advertise or otherwise suggest that the WeatherLogic System is a staple article of commerce or has a substantial noninfringing use. (*See generally* Exhibit K.) In fact, when used as shown in LP’s own marketing materials (*see* Exhibit K-L) and when used as instructed by LP (*see* Exhibit J), the WeatherLogic System directly infringes claims of the ’140 patent as described in paragraphs 139-142. No instructions provide for alternative uses of the WeatherLogic System other than for use in sheathing buildings to construct a building structure. (*See generally* Exhibit J.)

151. On information and belief, LP’s customers or customers of distributors selling LP’s WeatherLogic System—namely home builders and others in the construction industry—will directly infringe the ’140 patent by using the WeatherLogic System by constructing a building structure via a method claimed by the ’140 patent. LP knows and intends that its customers or customers of its distributors use (and, indeed, LP instructs customers to use) the WeatherLogic System in a manner that infringes the ’140 patent. (*See, supra,* ¶¶ 144-148.)

152. LP will induce infringement of at least independent claim 1 of the ’140 patent at by offering for sale and selling the WeatherLogic System directly to customers or through distributors to customers and through LP’s related marketing, advertising, instructions, customer

assistance, and selling activities. LP has instructed and encouraged, and continues to instruct and encourage, its customers or customers of its distributors to use the WeatherLogic System to create a building structure via a method claimed by the ’140 patent. (*See*, *supra*, ¶¶ 144-148.)

153. On information and belief, LP knows that its sale of the WeatherLogic System and instructions for use of the same will induce customers to directly infringe the ’140 patent. LP’s marketing materials and instructions for use of the WeatherLogic System via a method claimed by the ’140 patent demonstrate LP intends to induce customers to infringe the ’140 patent. (*See*, *supra*, ¶¶ 144-148.)

154. HEW has been damaged by LP’s infringement of the ’140 patent and will continue to be damaged in the future unless LP is permanently enjoined from infringing, directly or indirectly, the ’140 patent.

## COUNT VIII – PATENT INFRINGEMENT OF THE ’415 PATENT

155. HEW incorporates Paragraphs 1-154 by reference as if set forth fully as part of this count.

156. LP has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, at least independent claim 8 of the ’415 patent by making, offering for sale, using, or selling its WeatherLogic panels. Claim 8 of the ’415 patent reads as follows:

> A structural panel for use in sealed-joint panel system also including an adjacent structural panel and a sealant, the structural panel comprising:
>
> a structural layer comprising a wood composite material, wherein the structural layer has a first edge positioned opposite from a second edge and a third edge positioned opposite from a fourth edge, the first and second edges being parallel to one another, the third and fourth edges being parallel to one another, and the third and fourth edges being perpendicular relative to the first and second edges; and
>
> a water resistant and water vapor permeable layer secured to and coextensive with the structural layer,

> wherein the structural panel has a water vapor transmission rate from about 0.7 to about 7 grams/$m^2$/24 hr, as determined by ASTM E96 procedure A (73° F.-50% RH), and/or a water vapor permeance from about 0.1 to about 12 perms, as determined by ASTM E96 procedure B (73° F.-50% RH), and
>
> wherein in use the structural panel can be positioned adjacent the adjacent structural panel to define a joint therebweteen and the sealant can be applied to the two structural panels to cover the joint to form the sealed-joint panel system.

(Exhibit H at Col. 23:61-24:17.)

157. LP makes, uses, sells, offers for sale, or imports its WeatherLogic panels together with its WeatherLogic tape. Those panels are structural and consist of a wood composite material as they are made of OSB. (Exhibit J at 2; Exhibit M at 3.)

158. The panels also have a barrier layer secured to the surface of the panel that is water resistant and water-vapor permeable, as claimed by the ’415 patent. (*See*, *supra*, ¶ 29.)

159. Further, the panels have a water vapor permeance from about 0.1 to about 12 perms, as determined by ASTM E96 procedure B. (*See*, *supra*, ¶ 131.)

160. The panels have a total of four edges with the first and second being positioned opposite one another and parallel to each other; the third and fourth edges being positioned opposite one another and parallel to each other; and the third and fourth edges being perpendicular to the first and second edges:




4x8 ft. panels have a integrated, weather-resistant overlay.

(Exhibit K at 1.)

161. The panels can be positioned adjacent to one another with a joint therebetween. (*See, supra*, ¶¶ 23, 25, 36, 55.)

162. The joints of the panels can be sealed using LP's WeatherLogic tape (Exhibit J at 2) to create a sealed-joint panel system:




(Exhibit J at 1.)

163. HEW has complied with the marking requirements of 35 U.S.C. § 287, giving LP constructive notice of the ’415 patent.

164. LP is and has been on notice of the alleged infringement of the ’415 patent at least as of the time HEW filed and provided a copy of this Complaint. Further, on information and belief, LP was on notice of the Patents in Suit prior to the filing of this Complaint at least because those in the industry are aware that HEW previously asserted the related ’197 and ’044 patents against Georgia-Pacific Wood Products LLC in *Huber Engineered Woods LLC v. Georgia-Pacific Wood Products LLC*, Civil Action No. 3:16-cv-399 (W.D.N.C.). Continuing to make, use, sell, offer for sale, or import its WeatherLogic panels following notice of this lawsuit and its infringement of the ’415 patent constitutes willful infringement.

165. LP will contribute to the infringement of at least independent claim 8 of the ’415 patent by offering to sell and selling the WeatherLogic panels and through its related marketing, advertising, instructions, customer assistance, and selling activities which encourage, instruct, assist, and/or promote LP’s customers to use the WeatherLogic panels in an infringing manner.

166. The infringing WeatherLogic panels (along with WeatherLogic tape) comprise a material part of the claimed invention of the ’415 patent.

167. Further, the infringing WeatherLogic panel is especially made and adapted for use in infringement of the ’415 patent. The intent of LP, as evidenced by the instructions and marketing materials, is that the WeatherLogic panel be used in an infringing manner. (*See* Exhibits J-L.)

168. LP intends for and instructs that the panels be positioned adjacent to each other with a joint therebetween. (*See, supra,* ¶ 23, 25, 46, 55.)

169. LP also intends and instructs that the edges of the panels be sealed using its WeatherLogic tape to form a sealed-joint panel system. (*See, supra*, ¶ 162.)

170. Moreover, the WeatherLogic panel is not a staple article of commerce and has no substantial noninfringing use. LP's marketing materials and installation instructions state the WeatherLogic panels and WeatherLogic tape are intended to be used to provide a sheathing system with a water resistant and water vapor permeable barrier layer, wherein the system is sealed together by water resistant tape to create a sealed-joint panel system, as claimed in the claims of the '415 patent. (Exhibit K at 2.) Its marketing materials do not advertise or otherwise suggest that the WeatherLogic System is a staple article of commerce or has a substantial noninfringing use. (*See generally* Exhibit K.) In fact, when used as shown in LP's marketing materials (*see* Exhibit K-L) and when used as instructed by LP (*see* Exhibit J), the WeatherLogic System directly infringes claims of the '415 patent as described in paragraphs 157-162. No instructions provide for alternative uses of the WeatherLogic System other than for use in sheathing buildings to form a sealed-joint panel system. (*See generally* Exhibit J.)

171. On information and belief, LP's customers or customers of distributors selling LP's WeatherLogic System—namely home builders and others in the construction industry—will directly infringe the '415 patent by using the WeatherLogic System in a system that embodies the invention(s) of the '415 patent. LP knows and intends that its customers or customers of its distributors use (and, indeed, LP instructs customers to use) the WeatherLogic System in a manner that infringes the '415 patent.

172. LP will induce infringement of at least independent claim 8 of the '415 patent by offering for sale and selling the WeatherLogic panels directly to customers or through distributors to customers. LP has instructed and encouraged, and continues to instruct and

encourage, its distributors to offer for sale and sell the infringing WeatherLogic panels. Further, LP has instructed and encouraged, and continues to instruct and encourage, its customers or customers of its distributors to use the WeatherLogic panels to create a sealed-joint panel system in a manner that embodies the invention(s) claimed in the ’415 patent. (*See*, *supra*, ¶¶ 167-169.)

173. On information and belief, LP knows that its sale of the WeatherLogic panels and instructions for use of the same will induce customers to directly infringe the ’415 patent. LP’s marketing materials and instructions for use of the WeatherLogic panels in a manner claimed by the ’415 patent demonstrate LP intends to induce customers to infringe the ’415 patent. (*See*, *supra*, ¶¶ 167-169.)

174. HEW has been damaged by LP’s infringement of the ’415 patent and will continue to be damaged in the future unless LP is permanently enjoined from infringing, directly or indirectly, the ’415 patent.

## REQUEST FOR RELIEF

HEW requests the following relief:

a. A judgment and/or declaration that LP has infringed United States Patent Nos. 8,474,197; 9,010,044; 9,382,713; 9,546,479; 9,689,159; 9,695,588; 9,702,140 and 10,072,415, and that such infringement has been willful;

b. An injunction enjoining and restraining LP, its officers, directors, agents, servants, employees, attorneys, and all others acting under or through it from directly or indirectly infringing United States Patent Nos. 8,474,197; 9,010,044; 9,382,713; 9,546,479; 9,689,159; 9,695,588; 9,702,140 and 10,072,415;

c. A judgment and order requiring LP to pay all damages arising out of LP’s infringement of United States Patent Nos. 8,474,197; 9,010,044; 9,382,713; 9,546,479;

9,689,159; 9,695,588; 9,702,140 and 10,072,415, including treble damages for willful infringement as provided by 35 U.S.C. § 284, with interest;

d. A determination that this is an exceptional case;

e. A judgment and order directing LP to pay the costs and expenses of this action and attorneys' fees as provided by 35 U.S.C. § 285 and under other applicable law, with interest; and

f. Such other and further relief as this Court may deem just and equitable.

**DEMAND FOR JURY TRIAL**

HEW hereby demands that all issues be determined by jury.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Jennifer Ward (#6476)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mant.com
began@mnat.com
jward@mnat.com

*Attorneys for Plaintiff*
*Huber Engineered Woods LLC*

OF COUNSEL:

Jeffrey D. Blake
MERCHANT & GOULD P.C.
191 Peachtree Street N.E., Suite 3800
Atlanta, GA 30303
(404) 954-5100

Daniel W. McDonald
Paige S. Stradley
MERCHANT & GOULD P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-5300

February 18, 2019