## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

---

| | | |
|---|---|---|
| HUBER ENGINEERED WOODS LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 19-342-LPS |
| | : | |
| LOUISIANA-PACIFIC CORPORATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

Jack B. Blumenfeld, Brian P. Egan, and Jennifer A. Ward, MORRIS, NICHOLS, ARSHT & TUNNEL LLP, Wilmington, DE

Daniel W. McDonald, Paige S. Stradley, and Peter S. Selness, MERCHANT & GOULD P.C., Minneapolis, MN

Jeffrey D. Blake, MERCHANT & GOULD P.C., Atlanta, GA

     Attorneys for Plaintiff


Kelly E. Farnan, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE

W. Edward Ramage and Anthony F. Schlehuber, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Nashville, TN

Adam S. Baldridge and Lea H. Speed, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Memphis, TN

     Attorneys for Defendant

---

## **MEMORANDUM OPINION**

August 31, 2020
Wilmington, Delaware



**STARK, U.S. District Judge:**

Plaintiff Huber Engineered Woods LLC ("HEW") filed suit against Defendant Louisiana-Pacific Corporation ("LP") on February 18, 2019, alleging infringement of U.S. Patent Nos. 8,474,197 (the "'197 Patent"), 9,010,044 (the "'044 Patent"), 9,382,713 (the "'713 Patent"), 9,546,479 (the "'479 Patent"), 9,689,159 (the "'159 Patent"), 9,695,588 (the "'588 Patent"), 9,702,140 (the "'140 Patent"), and 10,072,415 (the "'415 Patent").  (D.I. 1)  The patents-in-suit all share the same title, "Panel for Sheathing System and Method," and share a common specification.  All of them generally relate to "structural sheathing panel systems that can be used to form part of the walls found behind the exterior finishes (such as siding or brick) of a building."  (D.I. 54 at 1)

The parties submitted a joint claim construction brief on May 12, 2020.  (D.I. 54)  The parties' submission included expert reports.  (D.I. 55 Exs. O, R, BB)  The Court held a remote claim construction hearing using videoconference technology on June 1, 2020.  (*See* "Tr.")[1]

## I.  LEGAL STANDARDS

The ultimate question of the proper construction of a patent is a question of law.  *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325 (2015) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-91 (1996)).  "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citation and internal quotation marks omitted).  "[T]here is no magic formula or catechism for conducting claim construction."

---

[1] The parties agree on the construction of three terms: "wafer board," "wood composite material," and "structural panel."  (D.I. 54 at 10)  The Court will adopt the agreed-upon constructions of these terms.

*Id.* at 1324.  Instead, the court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law."  *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning . . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (internal citations and quotation marks omitted).  "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent."  *Id.* at 1321 (internal quotation marks omitted).  The patent "specification is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered.  *Phillips*, 415 F.3d at 1314.  Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . . [b]ecause claim terms are normally used consistently throughout the patent."  *Id.* (internal citation omitted).

It is likewise true that "[d]ifferences among claims can also be a useful guide . . . .  For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."  *Id.* at 1314-15 (internal citation omitted).  This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim."  *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess.  In such cases, the inventor's lexicography governs."  *Phillips*, 415 F.3d at 1316.  It bears emphasis that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction."  *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)) (alteration in original) (internal quotation marks omitted).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence."  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).  The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the [Patent and Trademark Office] and includes the prior art cited during the examination of the patent."  *Phillips*, 415 F.3d at 1317.  "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."  *Id.*

"In some cases, . . . the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period."  *Teva*, 574 U.S. at 331.  "Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  *Markman*, 52 F.3d at 980.  For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to

collect the accepted meanings of terms used in various fields of science and technology."

*Phillips*, 415 F.3d at 1318.  In addition, expert testimony can be useful "to ensure that the court's

understanding of the technical aspects of the patent is consistent with that of a person of skill in

the art, or to establish that a particular term in the patent or the prior art has a particular meaning

in the pertinent field."  *Id.*  Nonetheless, courts must not lose sight of the fact that "expert reports

and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer

from bias that is not present in intrinsic evidence."  *Id.*  Overall, while extrinsic evidence "may

be useful to the court," it is "less reliable" than intrinsic evidence, and its consideration "is

unlikely to result in a reliable interpretation of patent claim scope unless considered in the

context of the intrinsic evidence."  *Id.* at 1318-19.  Where the intrinsic record unambiguously

describes the scope of the patented invention, reliance on any extrinsic evidence is improper.

*See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing

*Vitronics*, 90 F.3d at 1583).

Finally, "[t]he construction that stays true to the claim language and most naturally aligns

with the patent's description of the invention will be, in the end, the correct construction."

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).  It follows

that "a claim interpretation that would exclude the inventor's device is rarely the correct

interpretation."  *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007)

(quoting *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1550 (Fed. Cir. 1996)).

## II.      CONSTRUCTION OF DISPUTED TERMS[2]

### A.      Preamble Language/"Panel" Term

| Term | Plaintiff | Defendant | Court |
|------|-----------|-----------|-------|
| "A panel system to externally envelope a structure"[3] | "A system of panels capable of sheathing at least a portion of a structure that is suitable for use behind exterior finishes, such as siding, EIFS, brick, stucco, lap siding, vinyl, and the like." | Plain and ordinary meaning: "a system of panels to completely enclose the exterior walls or roof." | Non-limiting – no construction required. |
| "A panelized sheathing system for external walls of a building structure"[4] | "A system of panels capable of sheathing at least a portion of a structure that is suitable for use behind exterior finishes, such as siding, EIFS, brick, stucco, lap siding, vinyl, and the like." | Plain and ordinary meaning: "a system of panels to completely enclose the exterior walls or roof." | Non-limiting – no construction required. |
| "A panel system capable of covering at least a portion of a building frame structure"[5] | "A system of panels capable of sheathing at least a portion of a structure that is suitable for use behind exterior finishes, such as siding, EIFS, brick, | Plain and ordinary meaning: "a system of panels to completely enclose the exterior walls or roof." | Non-limiting – no construction required. |

---

[2] As in the parties' joint claim construction brief (*see* D.I. 54 at 2 n.1), "[c]itations to the specification of the '197 Patent . . . incorporate by reference the analogous portions of the other Asserted Patents."  Furthermore, "[t]he Parties agree that claim terms are to be construed consistently across all Asserted Patents."  (*Id.*)

[3] This term appears in claims 1 and 20 of the '197 Patent, claims 1 and 10 of the '044 Patent, and claims 1 and 8 of the '713 Patent.

[4] This term appears in claims 1 and 20 of the '479 Patent.

[5] This term appears in claim 1 of the '159 Patent.

| | | | |
|---|---|---|---|
| | stucco, lap siding, vinyl, and the like." | | |
| "A method of externally sheathing a building structure"[6] | "A method of sheathing at least a portion of a building with panels suitable for use behind exterior finishes, such as siding, EIFS, brick, stucco, lap siding, vinyl, and the like." | Plain and ordinary meaning: "a method of completely covering the exterior walls or roof." | Non-limiting – no construction required. |
| "A method of sheathing external walls of a building structure"[7] | "A method of sheathing at least a portion of a building with panels suitable for use behind exterior finishes, such as siding, EIFS, brick, stucco, lap siding, vinyl, and the like." | Plain and ordinary meaning: "a method of completely covering the exterior walls or roof." | Non-limiting – no construction required. |
| "Panel"[8] | No separate construction required. The preambles discussed above should be construed instead. | Plain and ordinary meaning. | No construction required. |

---

[6] This term appears in claim 12 of the '197 Patent, claim 11 of the '044 Patent, and claim 9 of the '713 Patent.

[7] This term appears in claim 11 of the '479 Patent.

[8] This term appears in claims 1, 3, 5, 8-9, 12-15, 17-18, and 20 of the '197 Patent, claims 1-3, 6, and 10-15 of the '044 Patent, claims 1-2, 5, 8-9, and 11-13 of the '713 Patent, claims 11-16, 18, and 20 of the '479 Patent, claims 1, 5-6, 10, 15-16, and 19 of the '159 Patent, claims 10, 15-16, and 19 of the '588 Patent, claims 10-11, 16, and 19-20 of the '140 Patent, and claims 11, 13-14, 16, 18-19, and 21 of the '415 Patent.  On June 4, 2020, the parties reported that "this term no longer requires construction in light of Plaintiff's agreement to remove the limitation designating 'panel' to mean 'structural panel' in Plaintiff's proposed construction of The Preamble Claim Terms."  (D.I. 60 at 3; *see also* Tr. at 78-79)  Thus, no construction is necessary.

HEW contends that these preambles are limiting and require construction.  (D.I. 54 at 12)[9]  HEW argues that its proposed constructions of the preambles make clear what a POSA would understand, namely that (i) "the panels used to envelope, sheath or cover a building structure are ***structural panels***, not exterior siding or the like," and (ii) "the panel system must be capable of sheathing at least a portion of a structure, but does not have to completely enclose the structure."  (*Id.*)  At the hearing, HEW abandoned the first of these contentions.[10]

With respect to HEW's proposed requirement that the panel system be capable of sheathing at least a portion of a structure but need not necessarily completely enclose the structure, HEW contends that this portion of the preamble is limiting because it "imparts structure that is not otherwise evident in the body of the claims."  (D.I. 54 at 14 (internal quotation marks omitted); *see also, e.g.*, '159 Patent cl. 1 (reciting "[a] panel system capable of covering at least a portion of a building frame structure"))  HEW finds support in two portions of the specification: one in which the panel system may be used to sheath either the roof or the walls of a structure, causing the panels to enclose a portion of but not necessarily the whole structure ('197 Patent at 1:45-3:5, 4:47, 15:29, Fig. 1); and the other in which the sheathing system works around the doors and windows in the walls, again resulting in the panels not completely enclosing a structure ('197 Patent at 2:39-43).  (D.I. 54 at 14)

---

[9] Contrary to HEW's assertion (D.I. 54 at 12), LP does not agree that the preambles are limiting (*see id.* at 19).

[10] In the briefing, it appeared that HEW was suggesting that "panel" should be understood as narrowly referring only to one type of panel: "structural panel."  (*See generally* D.I. 54 at 12-14)  HEW pointed to the specification (*see e.g.*, '197 Patent at 2:24-28, 2:50-59) (stating "present invention provides a panel for a roof [or wall] sheathing system comprising structural panels" and distinguishing structural panels from exterior finishes) and the prosecution history (*see* D.I. 55 Ex. K at 7) (distinguishing prior art ("Murphy") based on its lack of teaching of structural panels).  However, at the claim construction hearing, HEW stated that it was no longer asking the Court to limit "panel" to "structural panel."  (*See* Tr. at 78-79)

LP counters that the preambles are not limiting, although LP also contends that the preambles should be construed according to their plain and ordinary meaning.  (D.I. 54 at 19)  In LP's view, there are distinctions among the five preambles, and construing them collectively is improper.  (*See id.*)  Rather, to LP, the term "panel" should be construed and then that construction applied to each instance in which it occurs in the claims.  (*See id.* at 15)  Specifically, according to LP, "panel" "encompasses all the different types and variances of panels identified in the patents and should be construed in accordance with its plain and ordinary meaning to simply mean 'panel.'"  (*Id.*; *see also, e.g.*, '197 Patent at 2:39-43, 2:46-54, 3:60-64, 4:31-36, 5:3-11, 9:8-10, 9:38-45, 10:32-42, 10:46-50, 15:31-33, 15:49-53, 16:61-64)  As support, LP points to the specification's distinction between "panel," which can be made "from any building grade material as required for the particular build" and has no performance standard, and "structural panel," which must be "composed primarily of wood" and must meet performance requirements of PS-2-92.  (D.I. 54 at 16; *see also* '197 Patent at 4:31-36, 4:65-67, 15:49-53)  LP notes the specification discusses still other types of panels but HEW's position ignores the various distinctions among the different panels.  (*See* D.I. 54 at 16, 18)

The Court agrees with LP that the preambles are not limiting.  Contrary to HEW's contention, the preambles do not provide antecedent basis; that the preambles recite "a" structure that is later referred to in the claims as "the" structure is not, alone, a sufficient basis to find that the claims "derive antecedent basis from the preamble."  *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003).   In the context of the claims of the patents-in-suit, the "structure" referred to is the "building structure" with respect to which the claims are being performed; the preambles are only non-limiting statements of the intended purpose of the claims. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) ("In

general, a preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim.  Conversely, a preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.") (internal quotation marks and citations omitted).  In addition, the words from the preambles on which HEW relies – "structure" and "building frame structure" – are not claimed subject matter and thus do not affect the claim scope.  Nor does the prosecution history demonstrate reliance on the preambles to an extent that they should be construed as limiting, particularly given that the discussion of Murphy during prosecution did not address "structural panels."  (*See* D.I. 54 at 18; *see also* D.I. 55 Ex. K at 7)

The preambles are non-limiting and no construction is required.

**B.   "Wood"**[11]

| Plaintiff |
|---|
| Plain and ordinary meaning. |
| **Defendant** |
| "A cellular structure, having cell walls composed of cellulose and hemicellulose fibers bonded together by lignin polymer." |
| **Court** |
| No construction required. |

The parties argued their respective proposed constructions of "wood" in the joint claim construction brief.  (D.I. 54 at 32-35)  But in a joint submission filed after the hearing, the parties agreed that the term "does not appear as a standalone term in any claim of the Patents-in-Suit." (D.I. 60 at 4)  Instead, "wood" appears only in HEW's proposed construction of "structural wall

---

[11] "Wood" is not a claim term; it does not appear in any claim of any of the patents-in-suit.

panel" (a proposed construction the Court rejects for reasons discussed below).  (*Id.*)  There is no

need for the Court to construe "wood."  *See generally U.S. Surgical Corp. v. Ethicon, Inc.*, 103

F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed

meanings and technical scope, to clarify and when necessary to explain what the patentee

covered by the claims, for use in the determination of infringement.  It is not an obligatory

exercise in redundancy."); *see also Vivid Techs. Inc. v. Am. Sci. & Eng'g Inc.*, 200 F.3d 795, 803

(Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the

extent necessary to resolve the controversy.").

### C.   "Structural Wall Panel"[12]

| Plaintiff |
| --- |
| "A wall panel product composed primarily of wood which, in its commodity end use, is essentially dependent upon certain mechanical and/or physical properties for successful end use performance such as plywood."<br><br>Alternatively (as proposed on HEW's reply brief):<br><br>"A wall panel product composed primarily of wood which, in its commodity end use, is essentially dependent upon certain mechanical and/or physical properties for successful end use performance such as plywood.  A non-exclusive description may be found in the PS-2-92 Voluntary Product Standard." |
| **Defendant** |
| Plain and ordinary meaning: "wall panel that has sufficient strength and stiffness to be used as a load carrying member." |
| **Court** |
| "wall panel that has sufficient strength and stiffness to be used as a load carrying member" |

The parties have agreed to construe "structural panel" according to the definition

provided in the specification: "A panel product composed primarily of wood which, in its

commodity end use, is essentially dependent upon certain mechanical and/or physical properties

---

[12] This term appears in claims 1, 10-11, and 19 of the '479 Patent.

for successful end use performance such as plywood.  A non-exclusive description may be found in the PS-2-92 Voluntary Product Standard."  (D.I. 54 at 10)  HEW argues that "structural wall panel" should be construed according to the same definition with "wood" added to it.  (D.I. 54 at 36)  HEW points to the specification's explanation that "the present invention also provides a panel for a wall sheathing system comprising structural panels" ('197 Patent at 2:50-53) and its disclosure of an embodiment in which "the panels may be structural, and may comprise a wood composite . . . or may be made from any building grade material required for the particular build" (*id.* at 15:49-53; *see also* D.I. 54 at 37).

LP argues that the term should be given its plain and ordinary meaning, "which, in the construction industry, is 'wall panel that has sufficient strength and stiffness to be used as a load carrying member.'"  (D.I. 54 at 37) (quoting D.I. 55 Ex. O ¶ 46)  To LP, HEW's attempt to rely on the patentee's definition of "structural panel" is improper because (i) HEW's proposed construction for "structural wall panel" materially differs from the patentee's definition for "structural panel" and (ii) the intrinsic evidence supports LP's view that the two terms have different meanings.  (*Id.* at 38)

The Court agrees with LP.  The intrinsic evidence contradicts HEW's view that the definition of "structural panel" should be modified and adopted to derive the construction of "structural wall panel."  That the patentee provided a definition for "structural panel" but did not provide one for the term "structural wall panel" suggests that the definitions should be different, not (essentially) the same.  *See generally In re Rembrandt Techs. LP*, 496 F. App'x 36, 45 (Fed. Cir. 2012) ("[D]ifferent words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope.") (internal quotation marks omitted).  Elsewhere the patentee indicated when two terms were intended to have the same meaning.  (*See* '197

Patent at 4:25-27) ("As used herein, 'flakes' and 'strands' are considered equivalent to one

another and are used interchangeably.")  The Court believes a POSA would understand the claim

term to have its plain and ordinary meaning, which is the construction proposed by LP (HEW

does not appear to dispute that LP has correctly stated the plain and ordinary meaning).  (*See*

*generally* D.I. 54 at 36-45)

### D.    The "Barrier Layer" Limitations

| Term | Plaintiff | Defendant | Court |
|------|-----------|-----------|-------|
| "A barrier layer secured to the outer surface or the inner surface of each panel"[13] | "A barrier layer secured to the surface of an individual panel and not to other panels, wherein the barrier layer is secured before the panel is positioned on a structure."<br><br>Alternatively (as proposed in HEW's reply brief):<br><br>"A barrier layer secured to the outer surface or inner surface of an individual panel and not to other panels, wherein the barrier layer is secured before the panel is positioned on a structure." | Plain and ordinary meaning:<br><br>". . . secured *at any time* to . . ." | No construction required. |
| "A barrier layer secured to the outer | "A barrier layer secured to the surface of an individual panel and not to other | Plain and ordinary meaning: | No construction required. |

---

[13] This term appears in claims 1 and 20 of the '197 Patent, claims 1 and 10 of the '044 Patent, and claims 1 and 8 of the '713 Patent.

| surface of each panel"[14] | panels, wherein the barrier layer is secured before the panel is positioned on a structure."<br><br>Alternatively (construction proposed in HEW's reply brief):<br><br>"A barrier layer secured to the outer surface of an individual panel and not to other panels, wherein the barrier layer is secured before the panel is positioned on a structure." | "... secured *at any time* to ..." | |
|---|---|---|---|
| "[B]arrier layer secured to the outer surface of the first panel and the second panel"[15] | "A barrier layer secured to the surface of an individual panel and not to other panels, wherein the barrier layer is secured before the panel is positioned on a structure." | Plain and ordinary meaning:<br>"... secured *at any time* to ..." | No construction required. |
| "[B]arrier layer secured to the outer surface of each of the first and second structural panels"[16] | "A barrier layer secured to the surface of an individual panel and not to other panels, wherein the barrier layer is secured before the | Plain and ordinary meaning:<br>"... secured *at any time* to ..." | No construction required. |

---

[14] This term appears in claim 12 of the '197 Patent, claim 11 of the '044 Patent, claims 1, 11, and 20 of the '479 Patent, and claim 9 of the '713 Patent.

[15] This term appears in claim 1 of the '159 Patent.

[16] This term appears in claim 10 of the '159 Patent.

| | | | |
|---|---|---|---|
| | panel is positioned on a structure." Alternatively (construction proposed in HEW's reply brief): "A first barrier layer secured to the outer surface of the first structural panel and a second barrier layer secured to the outer surface of a second structural panel, wherein each of the first and second barrier layers is not secured to other panels and is secured before the panel is positioned on a structure." | | |
| "[B]arrier layer secured to the primary structural layer"[17] | "A barrier layer secured to the surface of an individual panel and not to other panels, wherein the barrier layer is secured before the panel is positioned on a structure." | Plain and ordinary meaning: ". . . secured *at any time* to . . ." | No construction required. |
| "A barrier layer secured to an external facing surface of each structural panel"[18] | "A barrier layer secured to the surface of an individual panel and not to other panels, wherein the barrier layer is secured before the | Plain and ordinary meaning: ". . . secured *at any time* to . . ." | No construction required. |

---

[17] This term appears in claim 15 of the '159 Patent.

[18] This term appears in claim 1 of the '588 Patent.

| | | | |
|---|---|---|---|
| | panel is positioned on a structure." <br><br> Alternatively (construction proposed in HEW's reply brief): <br><br> "A barrier layer secured to an external facing surface of an individual panel and not to other panels, wherein the barrier layer is secured before the panel is positioned on a structure." | | |
| "A barrier layer secured to an external facing surface of each OSB panel"[19] | "A barrier layer secured to the surface of an individual panel and not to other panels, wherein the barrier layer is secured before the panel is positioned on a structure." <br><br> Alternatively (construction proposed in reply brief): <br><br> "A barrier layer secured to an external facing surface of an individual OSB panel and not to other panels, wherein the barrier layer is secured before the | Plain and ordinary meaning: ". . . secured *at any time* to . . ." | No construction required. |

---

[19] This term appears in claim 10 of the '588 Patent.

| | panel is positioned on a structure." | | |
|---|---|---|---|
| "[B]arrier layer secured to an external facing surface of the first structural panel"[20] | "A barrier layer secured to the surface of an individual panel and not to other panels, wherein the barrier layer is secured before the panel is positioned on a structure." | Plain and ordinary meaning: "... secured *at any time* to ..." | No construction required. |
| "[B]arrier layer secured to an external facing surface of the first OSB panel"[21] | "A barrier layer secured to the surface of an individual panel and not to other panels, wherein the barrier layer is secured before the panel is positioned on a structure." | Plain and ordinary meaning: "... secured *at any time* to ..." | No construction required. |
| "[B]arrier layer secured to an exterior surface of the wood composite panel"[22] | "A barrier layer secured to the surface of an individual panel and not to other panels, wherein the barrier layer is secured before the panel is positioned on a structure." | Plain and ordinary meaning: "... secured *at any time* to ..." | No construction required. |

HEW argues that the "barrier layer" limitations each require a barrier layer (i) "secured to the surface of an individual panel and not to other panels" that is (ii) "secured before the panel is positioned on a structure."  (D.I. 54 at 48)  For the first of these proposed requirements, HEW finds support in the claim language and specification.  For example, HEW points to the

---

[20] This term appears in claim 1 of the '140 Patent.

[21] This term appears in claim 10 of the '140 Patent.

[22] This term appears in claims 11 and 16 of the '415 Patent.

specification's distinction between the invention and earlier house wrap systems that attached house wrap to sheathing panels.  ('197 Patent at 2:29-54, 3:1-5)  With respect to the second requirement, HEW relies on the claim language, which HEW contends "makes clear that the barrier layer is secured *before* the panel is positioned or fastened to the structure because it requires 'positioning at least two wall panel assemblies adjacent to each other, each panel assembly including . . . a barrier layer secured to the outer surface of each panel.'"  (D.I. 54 at 50) (quoting '479 Patent cl. 11) (emphasis in original)  According to HEW, the positioning step cannot be performed until after the barrier layer is secured to the panel.  (D.I. 54 at 50)

LP responds that the "barrier layer" term encompasses different layers and different types of barriers.  (D.I. 54 at 59; *see also* D.I. 55 Ex. O ¶ 96; '197 Patent at 2:3-6, 3:1-5, 4:54-58, 5:32-35, 5:44-50, 6:42-51, 6:60-66, 7:9-22, 8:32-37, 9:39-45, 10:22-24, 10:32-36, 16:19-50, 19:39-40)  LP contends that a POSA would understand that "barrier layer" means "layer that provides a barrier."  (D.I. 54 at 59; *see also* D.I. 55 at Ex. O ¶ 95)  LP also argues that the Court should reject HEW's request to construe all the barrier layer terms collectively and that HEW's proposed constructions ignore that the claims (and claim terms to be construed) refer to different types of panels (e.g., "structural panel," "OSB panel," "wood composite panel") in different claim terms.  (D.I. 54 at 51-52)  LP further disputes that the claims impose a temporal limitation requiring that the barrier layers be applied to a panel before installation on a structure.  (*Id.* at 53-59)

The Court is not persuaded by HEW that the claims should be construed to read either of HEW's proposed requirements into the "barrier layer" terms.

First, the Court is not persuaded that a POSA would read the barrier layer limitations as requiring "basically a one-to-one relationship between the panels and the barrier layers."  (Tr. at

19-20; *see also id.* at 28-29, 32-33, 36-37)  This may be one potentially reasonable reading of certain claim language (e.g., "[a] barrier layer secured to the outer surface or the inner surface of *each* panel") (emphasis added), but HEW has provided no persuasive basis to conclude that a POSA would read all of the "each" claims to require an equal number of panels and barrier layers.  To the contrary, the specification discloses (and certain claims clearly claim) embodiments in which a barrier layer stretches across two panels.  (*See, e.g.*, '197 Patent at 4:54-58, 5:32-35, 5:44-50, 6:42-51, 6:60-66, 7:9-22, 8:32-37, 10:32-36, 16:19-50, 19:39-40; '159 Patent cl. 1 ("barrier layer secured to the outer surface of the first panel and the second panel")) LP's expert declaration provides further support for the Court's conclusion.  (*See, e.g.*, D.I. 55 Ex. BB (Tonyan Supplemental Report) ¶¶ 53, 60 & Ex. 9; *but see id.* Ex. R (Straube Declaration) ¶¶ 126-27, 135)

Turning to HEW's second proposed requirement, the Court does not believe a POSA would understand the barrier layer limitations to require HEW's proposed temporal restriction. In general, "[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."  *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1340 (Fed. Cir. 2016) (internal quotation marks and citation omitted).  While the patents-in-suit at times expressly require a specific chronological sequence (*see e.g.*, '159 Patent cl. 15 ("first and second panels each also including a bulk water resistant barrier layer secured to the primary structural layer *prior to* installation of the first and second panels") (emphasis added)), they do not do so in connection with the barrier layer terms.  Further support for the Court's view is found in the specification, which discloses panels installed *before* a barrier layer is applied, contrary to HEW's proposed required timing.  (*See, e.g.*, '197 Patent Fig. 3)  The specification discloses an example involving HEW's temporal requirement, but the specification is explicit

18

that its examples are non-limiting.  (*See* '197 Patent at 21:41-47)  Additionally, in an *inter partes* review of the '479 Patent, the Patent Trial and Appeal Board ("PTAB") preliminarily determined that claim 11 requires the securing step to be completed before the positioning step, but also that other claims did ***not*** impose the same chronological order.  (D.I. 55 Ex. L at 10-11, 31-32)  The PTAB persuasively concluded: "Although the '479 patent describes embodiments wherein its panels each include a barrier layer before the panels are fastened to a building structure (*see, e.g.* ['197 Patent] Fig. 10), [HEW's] proposed construction attempts to read limitations improperly from the Specification into the claims.  Contrary to [HEW's] proposed construction, the word ***each*** does not convey the temporal component of ***before*** to the phrase."  (D.I. 55 Ex. L at 10-11)[23]

Having rejected both of the requirements HEW would read into the claims, there is no need to construe the barrier layer claim terms.

### E.     The Water Terms

| Term | Plaintiff | Defendant | Court |
|------|-----------|-----------|-------|
| "Water[-]resistant"[24] | "Resists penetration by precipitation but not necessarily impervious to penetration by precipitation." | Insolubly ambiguous and incapable of construction.<br><br>Alternatively, plain and ordinary meaning: "resistant to penetration of water in all forms." | Indefinite. |

---

[23] As LP acknowledged at the hearing, some of the claims may have other language (not "barrier layer") that imposes a temporal requirement, or a "one-to-one" requirement.  (*See* Tr. at 46-47)  But the Court is not reading either of these requirements into all claims through its construction of the "barrier layer" terms.

[24] This term appears in claims 4-5 and 15-16 of the '197 Patent, claims 1, 3, and 10-11 of the '044 Patent, claims 1 and 8-9 of the '713 Patent, and claims 1, 5, and 8 of the '415 Patent.

| "Bulk water[-] resistant"[25] | "Resists penetration by bulk water but not necessarily impervious to penetration by bulk water." | Insolubly ambiguous and incapable of construction.<br><br>Alternatively, plain and ordinary meaning: "resistant to penetration of water in bulk form." | Indefinite. |
|---|---|---|---|
| "Substantially bulk water resistant"[26] | Plain and ordinary meaning.<br>Not indefinite.<br>Enabled under 35 U.S.C. § 112. | Insolubly ambiguous and incapable of construction. | Indefinite. |
| "Water vapor permeable"[27] | Not insolubly ambiguous. | Insolubly ambiguous and incapable of construction. | Indefinite. |
| "Substantially water vapor permeable"[28] | Plain and ordinary meaning.<br>Not indefinite.<br>Enabled under 35 U.S.C. § 112. | Insolubly ambiguous an incapable of construction. | Indefinite. |

HEW contends that the water terms, including "water[-]resistant" and "bulk water[-]

resistant," connote *resistance* to water, not necessarily *imperviousness* to water.  (D.I. 54 at 71;

*see also* '197 Patent cls. 3, 14; *id.* at 6:42-55)  Some of the other of the disputed water terms –

---

[25] This term appears in claims 1 and 20 of the '197 Patent, claims 1 and 10 of the '044 Patent, claims 1 and 8 of the '713 Patent, claims 1, 7, 11, 17, and 20 of the '479 Patent, claims 1, 10, 15, and 19-20 of the '159 Patent, and claims 1, 10, and 17-18 of the '140 Patent.

[26] This term appears in claims 1, 12, and 20 of the '197 Patent, claims 1 and 10-11 of the '044 Patent, and claims 1 and 8-9 of the '713 Patent.

[27] This term appears in claims 1, 11, and 20 of the '479 Patent, claim 1 of the '159 Patent; claim 1 of the '140 Patent, and claims 1, 5, and 8 of the '415 Patent.

[28] This term appears in claims 1, 12, and 20 of the '197 Patent, claims 1 and 10-11 of the '044 Patent, and claims 1 and 8-9 of the '713 Patent.

including "substantially bulk water resistant" and "substantially water vapor permeable" – include terms of degree which, according to HEW, a POSA would understand are given their plain and ordinary meaning and do not require construction.  (D.I. 54 at 73)

LP argues that it has shown that all of the water terms are insolubly ambiguous[29] and, therefore, indefinite.  LP faults HEW for ignoring that the various water terms (i) refer to different forms of water and (ii) indicate different amounts of water that are permitted to pass through.  (D.I. 54 at 73-74)  According to LP, a POSA would understand that in the construction industry, the terms "water," "bulk water," and "water vapor" have different meanings.  (*Id.* at 73) As for the amounts of water, LP contends that in the context of the water terms, "substantially" is "insolubly ambiguous because a resistance to water cannot be distinguished from being ***substantially*** resistant to water since they both are resistant, and an amount that is permeable cannot be distinguished from an amount that is ***substantially*** permeable since they both are permeable."  (D.I. 54 at 75; *see also* D.I. 55 Ex. O ¶¶ 126-33)  As an indication of the indefiniteness of these claim terms, LP points out that, in different claims, the same component – the barrier layer – is alternatively claimed as "bulk water resistant" and "substantially bulk water resistant."  (D.I. 54 at 76; *see also* '197 Patent cls. 1, 12, 20 ("substantially"); '044 Patent cls. 1, 10, 11 ("substantially"); '713 Patent cls. 1, 8, 9 ("substantially"); '479 Patent cls. 1, 11, 20 ("bulk"); '159 Patent cls. 1, 10, 15 ("bulk"); '140 Patent cls. 1, 10 ("bulk"); '415 Patent cls. 11, 16 ("bulk"))  Similarly, the terms "water vapor permeable" and "substantially water vapor

---

[29] In making this argument, LP undertakes to meet a higher burden than is required to prove indefiniteness.  *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) (replacing prior "insolubly ambiguous" and "incapable of construction" standard for indefiniteness with easier-to-prove "reasonable certainty" test); *see also Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 527 (Fed. Cir. 2016) ("[I]t must be admitted that the 'insolubly ambiguous' standard is a harder threshold to meet than the post-*Nautilus* standard.").

permeable" are used to mean different things.  (D.I. 54 at 76-77; *see also* '197 Patent cls. 1, 12, 20; '044 Patent cls. 1, 10, 11; '713 Patent cls. 1, 8, 9; '479 Patent cls. 1, 11, 20; '159 Patent cl. 1; '140 Patent cl. 1; '415 Patent cls. 1, 5, 8; D.I. 55 Ex. O ¶¶ 134-37)  In LP's view, a POSA would have no way of knowing what amounts would satisfy "***substantially*** bulk water resistant" as opposed to "bulk water resistant," or how much permeability would satisfy "***substantially*** water vapor permeable" as opposed to "water vapor permeable."  (D.I. 54 at 77; *see also* D.I. 55 Ex. O ¶¶ 125, 135-37)

HEW, relying on its expert (Dr. Straube), responds that a POSA would consider the term "substantially bulk water resistant" to mean the same thing as "bulk water resistant," and would further consider "bulk water" and "water" to mean the same thing.  (D.I. 54 at 78-79) (citing D.I. 55 Ex. W ¶ 143)

A term is indefinite where the claims, "read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  "Any fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence."  *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1228 (Fed. Cir. 2016) (alteration in original; internal quotation marks omitted).

LP has proven by clear and convincing evidence that a POSA would not understand, with reasonable certainty, the meaning of the water terms, and would not understand how to distinguish among them.  For the reasons explained by LP, the intrinsic evidence supports the conclusion that the terms were intended to carry different meanings.  *See generally Seachange Int'l, Inc. v. C-COR Inv.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) (stating general principle that different claim terms have different meanings); *see also Rembrandt*, 496 F. App'x at 45 (same).

For instance, a POSA reading the patents-in-suit would not understand the claims to equate "water" with "bulk water," or "bulk water resistant" with "substantially bulk water resistant." (D.I. 55 Ex. O ¶¶ 123, 132-33, 138)  Moreover, while terms of degree can be permissible, that is so where the claims provide "enough certainty to one of skill in the art when read in the context of the invention," *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014) ("[A]bsolute or mathematical precision is not required."); *see also Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1346 (Fed. Cir. 2018) ("All that is required is some standard for measuring the term of degree."), which is not the case here.  Again, a POSA would understand that, in the context of the patents-in-suit, "bulk water resistant" is different than "*substantially* bulk-water resistant," but would not have any reasonable degree of certainty as to how (or in what amounts) they differ.

F.      **"Edge Sealant"**[30]

| Plaintiff |
|---|
| Plain and ordinary meaning. |
| **Defendant** |
| "Material used to seal the edges of a single panel during the manufacturing process." |
| **Court** |
| "Material used to seal the edges of a single panel during the manufacturing process." |

The parties agree that the plain and ordinary meaning of this claim term applies.  (D.I. 54 at 84)  In LP's view, the specification distinguishes between "edge sealant" and "seam sealant." (D.I. 54 at 84-85; *see also* '197 Patent at 16:61-17:4, 17:27; '159 Patent cls. 1-9, 15-20; '588 Patent cls. 1-9; '140 Patent cls. 1-9)  Thus, LP contends that the plain and ordinary meaning is

---

[30] This term appears in claims 1, 2, 4, and 20 of the '197 Patent, claims 1 and 9-10 of the '044 Patent, and claims 1 and 7-8 of the '713 Patent.

"material used to seal the edges of a single panel during the manufacturing process." (D.I. 54 at 85) According to HEW, however, a POSA would understand that "edge sealant" is used to refer to sealing joints between panels as well as sealing the edges of a single panel. (D.I. 54 at 85; *see also* '197 Patent cls. 1, 4)

The Court agrees with LP that the doctrine of claim differentiation supports a conclusion that "edge sealant" has a different meaning than "seam sealant." (*Compare, e.g.*, '197 Patent cl. 1 *with* '159 Patent cl. 1; *see also Rembrandt*, 496 F. App'x at 45) The patentee indicated when different terms were intended to have the same meaning (*see, e.g.*, '197 Patent at 4:25-27) and did not do so with respect to "edge sealant" and "seam sealant." The Court is persuaded that a POSA would understand "edge sealant" is given its plain and ordinary meaning, i.e., the meaning proposed by LP.

### G. "Coextensive"[31]

| Plaintiff |
| --- |
| "extending over only the same area" |
| **Defendant** |
| "covers" |
| **Court** |
| "covers" |

HEW finds support for its proposed construction of "coextensive" in claims 1 and 8 of the '415 Patent, which, in HEW's view, "indicate[] that the water resistant and water vapor permeable layer cover[] only the same area as the structural layer." (D.I. 54 at 87) Further, HEW argues that the sealant limitation in these two claims only makes sense if a water-resistant and water-vapor permeable layer extend ***over the same area as a structural panel***. (*See id.*)

---

[31] This term appears in claims 1 and 8 of the '415 Patent.

HEW cites as further support portions of the specification (*see, e.g.*, '415 Patent at 6:29-34, 9:66-10:3, 17:40-42) and a dictionary definition of "coextensive," i.e., "equal or coincident in space, time or scope."  (D.I. 54 at 87)

LP contends that its proposed construction is consistent with the intrinsic evidence and the plain and ordinary meaning that a POSA would understand "coextensive" to have in the context of the claims.  (*Id.* at 88)  LP criticizes HEW's proposed construction for arbitrarily adding a limitation "that coverage must extend all the way to every edge of the structural panel and stop at those edges."  (*Id.*)  For example, LP points to an embodiment disclosed in the '197 Patent which would be read out of the claims if the Court were to adopt HEW's construction, as this particular embodiment only "preferably substantially cover[s] the outward facing surface of the panels," which means in this embodiment full coverage is not required.  (*Id.* at 88-89 (citing '197 Patent at 6:18-19); *see also* '197 Patent at Figs. 3, 5, 9A, 9B, 8:32-33, 8:57-59)

"A claim construction that excludes a preferred embodiment . . . is rarely, if ever, correct."  *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) (internal quotation marks omitted).  HEW's proposed construction adds a limitation unsupported by the intrinsic evidence and would exclude preferred embodiments identified in the specification.  HEW's expert declaration does not assist it because it is not consistent with the intrinsic evidence, particularly the disclosed embodiments that HEW would exclude.  *See generally Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) ("Only if there were still some genuine ambiguity in the claims, after consideration of all available intrinsic evidence, should the trial court have resorted to extrinsic evidence, such as expert testimony, in order to construe [disputed claim term].").

### III.    CONCLUSION

An appropriate Order follows.