IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HUBER ENGINEERED WOODS LLC,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>LOUISIANA-PACIFIC CORPORATION,<br><br>    Defendant/Counterclaim-Plaintiff. | Civil Action No. 19-342-VAC-SRF<br><br>**JURY TRIAL DEMANDED**<br><br>REDACTED - PUBLIC VERSION |

**HUBER ENGINEERED WOODS LLC'S LETTER IN
RESPONSE TO LOUISIANA-PACIFIC CORPORATION'S
OPENING LETTER TO THE HONORABLE SHERRY R.
FALLON REGARDING ITS COMBINED MOTIONS TO COMPEL**

OF COUNSEL:

Daniel W. McDonald
Jeffrey D. Blake
MERCHANT & GOULD P.C.
191 Peachtree Street N.E., Suite 3800
Atlanta, GA  30303
(404) 954-5100

Paige S. Stradley
Eric R. Chad
Peter S. Selness
MERCHANT & GOULD P.C.
150 South Fifth Street, Suite 2200
Minneapolis, MN  55402
(612) 332-5300

John T. Winemiller
MERCHANT & GOULD P.C.
800 South Gay Street, Suite 2150
Knoxville, TN  37929
(865) 380-5960

Originally Filed:  May 6, 2022
Redacted Version Filed:  May 13, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiff/Counterclaim-
Defendant Huber Engineered Woods LLC*

Dear Judge Fallon,

Plaintiff Huber Engineered Woods LLC ("HEW") provided accurate and complete discovery to Defendant Louisiana-Pacific Corporation ("LP") in both its privilege log and its responses to Interrogatory Nos. 28, 29 and 32. LP cannot show otherwise, which is the reason LP's letter speaks in general terms while seeking to compel broad discovery with only one month left in supplemental fact discovery. For example, eighteen months after HEW produced its privilege log, LP now seeks to compel the logging of hundreds of additional communications between HEW and outside prosecution counsel concerning 19 patent applications that LP has defined as part of the "Huber Patent Family" with no explanation of how log entries for clearly privileged information will be relevant to the issues in this case. Further, LP now suddenly has a problem with hundreds of the existing entries on HEW's privilege log (which are proper), despite the fact that LP never said anything about these privilege log entries during the original fact discovery period in this case. Moreover, LP takes issue with the 24 page responses that HEW provided to each of Interrogatory Nos. 28, 29 and 32 even though HEW has repeatedly told LP that (1) HEW produced all of the information that it has about events that took place twenty years ago and (2) HEW's parent, J.M. Huber Corporation, does not have responsive information separate from that in HEW's possession.

The real motivation for LP's motions is to further LP's strategy of delaying this case. HEW filed this case in February 2019, and, from the beginning, LP sought to delay. LP asked for numerous extensions of fact discovery, twice sought to stay fact discovery, and repeatedly asked HEW to extend the expert discovery deadlines. Notably, this is not the first time LP utilized the strategy of moving to compel additional information just before the close of fact discovery in an effort to delay. The original fact discovery period in this case closed on May 3, 2021 (after 18 months of fact discovery). One month before the close of original fact discovery, LP moved to compel supplemental infringement contentions and interrogatory responses even though HEW's discovery responses were already hundreds of pages long. The Court denied that request, finding that HEW provided "quite extensive" discovery responses. (See Ex. A, Tr. of Apr. 5, 2021 Discovery Conference, at 6:18-8:25.) Now, one month from the close of supplemental fact discovery, LP is trying the same strategy. HEW requests that the Court deny LP this time as well.

### A. **HEW Should Not Be Compelled to Log Prosecution Documents of the Patents-In-Suit.**

LP requests that HEW be compelled to supplement its privilege log to add documents concerning the prosecution of HEW's patents both (1) pre-litigation and (2) post-litigation in the time period of November 2020-January 4, 2022. (LP Br. at 1.) With respect to the pre-litigation prosecution documents, HEW objects because the undue burden of logging these documents significantly outweighs any probative value of them, particularly at this late stage of supplemental fact discovery. LP is incorrect when it asserts that it is seeking supplementation on "limited subject matter." (*Id.*) LP's Requests for Production define the "Huber Patent Family" as including 19 patents or patent applications – U.S. Patent Nos. 7,658,040; 7,721,506; 7,677,002; 7,877,938; 7,866,100; 7,870,694; 8,112,950; 8,474,197; 9,010,044; 9,382,713; 9,546,479; 9,702,140; 9,695,588; 9,689,159; and 10,072,415, and U.S. Patent Application Nos. 60/547,031, 60/547,029, 16/551,214 and 17/529,437. (Ex. B at 3.) The prosecution of these 19 patents and patent applications spans 18 years across four different outside prosecution law firms. There would be thousands of communications or documents to log across all of this prosecution work.

The Honorable Sherry R. Fallon                                                                           May 6, 2022

Moreover, LP cannot seriously contest that communications between HEW and its outside prosecution counsel, or internal communications among HEW's in-house counsel, relating to prosecution of patent applications is privileged. *In re Delta*, Civil Action No. 17-mc-328-RGA, 2018 WL 5033756, at *3 (D. Del. Oct. 17, 2018) (finding that prosecution files are presumptively privileged and that a privilege log of such materials was unduly burdensome and unnecessary); *Games2U, Inc. v. Game Truck Licensing, LLC*, No. MC-13-00053-PHX-GMS, 2013 WL 4046655, at *7 (D. Ariz. Aug. 9, 2013) (same). LP notes that HEW's log does not include communications with one of HEW's outside prosecution counsel (John Greenwald). HEW did not search for and produce these communications—which would have been in the files of in-house HEW counsel—precisely because the information is clearly privileged and it is unduly burdensome to log them in light of the minimal probative value. Indeed, LP identifies no probative value that will be provided by privilege log entries for pre-litigation prosecution documents. Importantly, HEW produced the non-privileged documents for the prosecution activity (i.e. the prosecution history files), and LP is free to review them for any probative information in support of its defenses.

The undue burden of LP's request is magnified by the late stage of supplemental fact discovery. LP received HEW's privilege log on October 12, 2020. Upon reviewing HEW's log, LP never followed up to ask HW to supplement the log with prosecution documents during the initial fact discovery period, which ended May 3, 2021. Instead, LP waited 18 months until the Parties are at the end of what is supposed to be limited supplemental fact discovery to seek significant supplementation. Supplemental fact discovery closes on June 2, 2022, and the Parties have scheduled 23 depositions between them in the next month. LP simply waited too late.

With respect to the post-litigation prosecution documents, HEW objects for the same reasons as those discussed above, namely that it is unduly burdensome to log these clearly privileged documents. *See In re Delta*, 2018 WL 5033756, at *3; *Games2U,* 2013 WL 4046655, at *7. Moreover, the Parties have an express agreement "that, with respect to information generated after the filing of the Complaint [February 18, 2019], the Parties are not required to include any such information on a privilege log." (D.I. 20 at 8.) LP entered into this agreement with the knowledge that HEW was still prosecuting patents at that time, and that information from those post-litigation prosecution activities would not be logged. Also, HEW produced the public prosecution documents relating to its post-litigation prosecution activities.

**B.  <u>HEW's Privilege Log is Proper and the Logged Documents are Privileged.</u>**

LP also asks that HEW be required to produce hundreds of documents from its privilege log. HEW objects to this request because (1) HEW's privilege log demonstrates that these documents are privileged (2) LP delayed for 18 months in raising this issue. With respect to the timing, as previously stated, HEW produced its privilege log on October 12, 2020. (See LP's Br., Ex. A.) LP did not raise an issue with the privilege log entries during the remaining seven months of the initial discovery period, which ended on May 3, 2021. This is a strong indication that LP's counsel at the time (Baker Donelson) did not believe there to be a problem with the privilege log entries. It is eighteen months later, after LP added new counsel at Bryan Cave, that LP purports to have an issue with the existing privilege log entries. With less than a month until supplemental fact discovery closes, it is too late for LP to raise this issue. LP argues that it needs to do so because it wants a "full and fair opportunity to defend against HEW's new cause of action." (LP Br. at 2.) But LP had seven months of a full and fair opportunity to address these privilege log entries during

2

The Honorable Sherry R. Fallon                                                                                               May 6, 2022

the original fact discovery period, and it saw no problem with the privilege log entries during that time. Moreover, the Court stated that "generally, supplemental discovery will be 'directed to new issues that arise from the addition of the Certificate of Correction'" that was obtained for the '588 Patent, which involved correcting minor typographical or clerical errors to the priority claim of the patent and no changes to the patent's claims or specification. (D.I. 296.) As LP itself acknowledges, many of the log entries that it now discusses have nothing to do with the Certificate of Correction. (LP Br. at 2, discussing privilege log entries relating to "Georgia Pacific," "Zip System," etc.)

Further, regardless of the timing of LP's current motion, HEW's privilege log entries are proper. Here, rather than address individual log entries, LP provides cursory arguments that purportedly relate to large groups of documents. (LP Br. at 2.) For example, LP argues that many documents do not identify an attorney as author. (*Id.*) Without disclosing the privileged communications within any one of those documents, HEW states that many of the documents may be presentations whose author is unclear but which contain privileged communications within them about HEW legal matters. HEW could supplement these privilege log entries to identify the group of HEW attorneys from which the author may have come given the date of the document. HEW will do so if that will resolve LP's concern. But the proper response to LP's issue is not to declare that these documents are not privileged. There is no *per se* rule that the documents containing privileged information are not privileged simply because the author of the final document is unclear.

In addition, LP also argues that many of HEW's existing privilege log entries "fail to provide an adequate description of the document to support HEW's claim of privilege." (LP Br. at 2.) HEW disagrees. As can be seen from a review of HEW's privilege log, HEW's entries prove a sufficient explanation of the basis for privilege to be determined. To use the first example cited in LP's brief, HEW's privilege log provides the following description for Entry 65 – ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (LP Br., Ex. A, at 11.) The next entry identified by LP is for Entry 67, whose description reads ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (*Id.*) Both entries reflect the fact that communications were had with counsel for the purpose of obtaining legal advice, both entries provide the date of the communications and the subject matter, and the second entry states that legal advice from counsel is contained within the document. Thus, each of the entries explains that an attorney was involved in the communication, provide the date and identify the general subject matter of the communication. This is a proper description. Notably, this level of detail in the document description is almost exactly the same as the level of detail provided by LP in its privilege log entries. (See Ex. C.)

Finally, LP states that "no privilege log redacted documents have been logged by HEW." (LP Br. at 2.) HEW responds that the redacted documents were produced with a notation of the redactions. Thus, LP can look at the documents to determine the author of them, the date of the documents, and the subject matter of the documents. LP has known that HEW took this approach to redactions for eighteen months, and LP never previously raised this issue. It is notable that in the discovery hearing on April 5, 2021, LP convinced the Court to require HEW to remove redactions to documents where the redactions were on the basis of relevance. (Exhibit A.) This left the only redactions as those based on privilege claims, so LP knows where all of the privilege redactions are located within the documents. To the extent LP also wanted all privilege redactions to be logged, the time to raise that issue was at the April 5, 2021 discovery conference when the Parties

3

The Honorable Sherry R. Fallon                                                                                      May 6, 2022

were discussing redactions to documents. LP passed on that opportunity. At this late date in supplemental fact discovery, it would be unduly burdensome and prejudicial to require HEW to try to log the large number of documents redacted for privilege when LP could have raised this issue at least a year ago.

**C. HEW Has Already Fully Responded to Interrogatory Nos. 28, 29 & 32.**

LP asserts that HEW's responses to Interrogatory Nos. 28, 29 and 32 are deficient. (LP. Br. at 3.) HEW disagrees. HEW provided twenty-four pages of information in response to each of these interrogatories, in which HEW explained ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (LP Br., Exs. C-D.) HEW's interrogatory responses identify the events that took place, the best dates of which HEW is aware considering these events took place 20 years ago, the people who were involved considering these events took place twenty years ago, and the relevant documents that HEW has been able to identify, all of which were produced by HEW. The documents were identified by production number, so LP can easily find them. Indeed, in its latest supplementation of the interrogatory responses, HEW went point-by-point to respond to each of LP's invalidity contentions concerning ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Contrary to LP's assertions, HEW has identified many individuals and persons by name. Further, HEW also stated ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and identified documents to support that contention. HEW also explained how t▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ HEW provided the responsive information that it has. LP has been able to confirm this during depositions, as LP took the deposition of five named inventors and asked them questions about this subject matter. HEW also provided a Rule 30(b)(6) deposition witness on this subject matter. To the extent more information is not known, it is due to the fact that these events happened twenty years ago.

**D. J.M. Huber Corporation Has No Further Knowledge on Interrogatory Nos. 28, 29 & 32.**

LP's issue with respect to responsive information to Interrogatory Nos. 28, 29 and 32 is moot. (LP Br. at 3-4.) HEW previously informed LP that J.M. Huber Corporation ("J.M. Huber") had no additional responsive information to these interrogatories beyond that possessed by HEW. At one time during the development ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that is the subject of these interrogatories, the individuals working on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ were employees of J.M. Huber. However, before the project was completed, J.M. Huber formed HEW as a business and transferred all of the employees, documents and information relating to ▓▓▓▓▓▓▓▓▓▓ to HEW. Thus, HEW is possession of the documents and information responsive to these interrogatories. J.M. Huber has no documents or information beyond what is known to and was produced by HEW. LP asserts that counsel stated during a meet and confer on April 2,5 2022, that J.M. Huber may have additional responsive information. HEW disagrees; that was not stated during the meet and confer. In any event, to avoid uncertainty, HEW states that J.M. Huber has no further responsive information.

4

The Honorable Sherry R. Fallon                                                                                          May 6, 2022

                                         Respectfully,

                                         */s/ Brian P. Egan*

                                         Brian P. Egan (#6227)

BPE/bac
Attachments

cc:     Clerk of the Court (via hand delivery; w/attachments)
        All Counsel of Record (via electronic mail; w/attachments)