# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HUBER ENGINEERED WOODS LLC, | ) | |
| | )) | C.A. No. 19-342-VAC-SRF |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| LOUISIANA-PACIFIC CORPORATION, | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| Defendant. | | |

**DEFENDANT LOUISIANA-PACIFIC CORPORATION'S OPENING LETTER TO THE HONORABLE SHERRY R. FALLON REGARDING ITS MOTION TO COMPEL RELEVANT PROSECUTION-RELATED DOCUMENTS AND <u>RULE 30(B)(6) DEPOSITION OF RDH BUILDING SCIENCE INC.</u>**

OF COUNSEL:

W. Edward Ramage
Baker, Donelson, Bearman,
    Caldwell & Berkowitz, PC
Baker Donelson Center - Suite 800
211 Commerce Street
Nashville, TN 37201
(615) 726-5600

Adam S. Baldridge
Lea H. Speed
Baker, Donelson, Bearman,
    Caldwell & Berkowitz, PC
165 Madison Avenue - Suite 2000
Memphis, TN 38103
(901) 526-2000

Joseph J. Richetti
Alexander Walden
Frank M. Fabiani
Bryan Cave Leighton Paisner LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 541-2000

Dated:  June 8, 2022

Kelly E. Farnan (#4395)
Renée Mosley Delcollo (#6442)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
delcollo@rlf.com

*Attorneys for Defendant/Counterclaim Plaintiff Louisiana-Pacific Corporation*

Dear Judge Fallon,

  We write on behalf of Defendant Louisiana-Pacific Corporation ("LP") in advance of the teleconference scheduled for June 13 to resolve two discovery disputes.  First, in response to LP's inequitable conduct claims, Plaintiff Huber Engineered Woods LLC ("HEW") has selectively disclosed, and/or affirmatively relies upon, certain cherry-picked privileged materials from the prosecution files of the '588 and '044 patents.  At the same time, HEW refuses to produce all of the documents it relies on, let alone the numerous other privileged materials in the prosecution files.  This is plainly improper. Accordingly, LP seeks an order compelling HEW to produce all materials related to the prosecution of the '588 and '044 patents, including those identified on HEW's supplemental privilege logs (Exs. 1, 2). Second, although Judge Stark ordered HEW to provide RDH for a Rule 30(b)(6) deposition during the December 28, 2021 hearing on LP's motion to strike (D.I. 280), HEW refuses to make a witness available in response to LP's subpoena. Thus, LP seeks an order compelling HEW to comply with Judge Stark's December 28th order.

  **I.**  **HEW Has Waived Any Privilege Related To Its Prosecution Files.**

  "The attorney-client privilege cannot be used as both a sword and a shield." *Energy Heating, LLC v. Heat On-The-Fly*, LLC, 889 F.3d 1291, 1303 (Fed. Cir. 2018); *see also Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1361-64 (Fed. Cir. 2017); *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1300-01 (Fed. Cir. 2006) ("selective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice…[t]o prevent such abuses, we recognize that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter.") (internal citations omitted); *Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*, 707 F. Supp. 2d 463, 471 (D. Del. 2010) ("Plaintiffs are attempting to use the advice of counsel both as a sword to defeat the intent prong of inequitable conduct and as a shield to prevent defendants from obtaining information to prove intent to withhold information from the PTO. They cannot have it both ways.").  Similarly, an "'at-issue waiver' may arise 'when the party attempts to use the privilege both as a shield and a sword' by 'partially disclosing privileged communications or affirmatively relying on them to support its claim or defense and then sheild[ing] the underlying communications from scrutiny." *Pall Corp. v. Cuno Inc.*, 268 F.R.D. 167, 170 (E.D.N.Y. 2010).

  As detailed in LP's Answer, LP's inequitable conduct claims are based, in part, on the fact that HEW made unmistakably false representations to the Patent Office about its attempts to locate the named inventors and have them execute the necessary oaths and declarations that were required to secure issuance of the '044 and '588 patents.  (D.I. 297 at pp. 152-156.)  Importantly, such declarations are a prerequisite for obtaining a patent, in which the inventor makes sworn representations that he or she is, in fact an original inventor of the claimed subject matter and has complied with various duties to the Patent Office.  *See Aster Graphics, Inc. v. Static Control Components, Inc.*, No. SACV171167DOCJDEX, 2018 WL 2425973, at *2, *9 (C.D. Cal. Feb. 12, 2018) ("an inventor's oath or declaration is required for the filing of patent application" and "affirmative misrepresentations regarding the diligence of a search for the inventors are not mere 'technical errors' to be remedied, but may be considered affirmative misrepresentations that are 'inherently material.'") Here, HEW failed to submit declarations for five named inventors of the '044 and '588 patents. Rather, HEW submitted Substitute Statements, in which HEW represented

1

to the Patent Office that each of the inventors either refused to execute a declaration or could not be located by HEW despite a diligent search. (D.I. 297 at pp. 154-155.)

In an attempt to demonstrate that HEW acted diligently in trying to locate these named inventors, HEW voluntarily chose to make "third party" productions from HEW's counsel, Mr. Greenwald, on March 11 and May 10, 2022.[1] These productions include a cherry-picked set of documents and communications from the prosecution files of the '588 and '044 patents, upon which HEW affirmatively relies upon in its responses to LP's interrogatories. (*See*, *e.g.*, Ex. 3, HEW's Fourth Supp. Resp. to LP's Sixth Irrogs., Interrogatory No. 37. at pp. 48-49 (citing JG0000001-JG0000072).)  For example, these disclosed materials include communications between HEW's counsel (*e.g.*, Mr. Greenwald and Ms. Ades) and the named inventors (including named inventors who were then employed at HEW) regarding draft oaths and declarations.  (*See*, *e.g.*, Ex. 4.)  Such legal communications between counsel and inventors are clearly privileged. *See*, *e.g.*, *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) (holding that the entire "inventor record" is privileged); *Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 14 CV 3618, 2016 WL 307310, at *3-4 (N.D. Ill. Jan. 26, 2016) (citing to *Spalding* to find that draft inventor declarations were privileged and noting that "the dynamic between an inventor and patent lawyer supports an expectation from the parties that their communications will remain confidential.").

As another example, HEW also produced various communications between Greenwald and HEW's in-house counsel, Ms. Ades, pertaining to the disclosure of prior art to the Patent Office. (*See*, *e.g.*, Ex. 5.)  For example, these communications include legal advice from Mr. Greenwald regarding the ongoing nature of HEW's duty of disclosure to the Patent Office and the need for HEW to provide copies and/or descriptions of any prior art of which it becomes aware related to the '588 patent. (*Id*.)  LP's inequitable conduct claims are also based on the fact that HEW withheld material prior art from the Patent Office during prosecution of the '588 patent and related applications (*e.g.*, ███████████████████████████████████████

██████████████████████ . (D.I. 297 at pp. 79-81, 85-128.)  Presumably, HEW selectively produced these privileged communications in an attempt to demonstrate that HEW and its counsel complied with their duties to disclose all material prior art to the Patent Office.

Significantly, it is indisputable that HEW has only produced a subset of the privileged prosecution materials for the '588 and '044 patents—presumably only those that HEW believes are favorable to its allegations that it acted diligently to locate the named inventors and complied with its duty of disclosure at the Patent Office.  Indeed, even HEW's supplemental privilege logs identify numerous other documents and communications as explicitly relating to these same issues.[2]  (*See*, *e.g.*, Ex. 1 at Nos. 696-706, 708-711; Ex. 2 at Nos. 902, 1014-1021.)  HEW deliberately chose to waive privilege by disclosing and relying upon these selected prosecution

---

[1] These voluntarily produced materials are all directly related to the prosecution of HEW's patents, and, therefore, are plainly HEW's documents subject to HEW's privilege.

[2] Notably, although HEW's prosecution counsel produced certain prosecution-related documents, they have refused to provide a privilege log. (Exs. 6, 7.)  HEW also failed not respond to an e-mail asking it to confirm whether its privilege logs identify all of HEW's relevant prosecution materials, including the prosecution files in the custody of its prosecution counsel.  (Ex. 8.).

2

materials, and putting its own conduct (and that of its counsel) before the Patent Office at issue. *See, e.g.*, *Regeneron,* 864 F.3d at 1361.  Thus, HEW cannot use privilege to shield all of the other relevant prosecution materials. *See*, *e.g.*, *EchoStar*, 448 F.3d at 1299 ("when EchoStar chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel, which would include communications with Merchant & Gould."); *Fort James*, 412 F.3d at 1349; *Brigham & Women's Hosp.*, 707 F. Supp. 2d at 472.  Accordingly, HEW should be compelled to produce all materials pertaining to the prosecution files for the '588 and '044 patents, including, at a minimum, all materials related to: (i) the inventor oaths and declarations, including the Substitute Statements, and (ii) the identification and disclosure of prior art, including any analysis or discussions as to whether a reference should be disclosed.

Additionally, LP's inequitable conduct claims are further based on HEW's activities at the Patent Office in 2021, during which HEW filed requests for certificates of correction and petitions under 37 C.F.R. §1.78 to change the priority stated in the '588 patent and related patents. (D.I. 297 at pp. 83-85, 161-72.)  Specifically, in the §1.78 Petitions, which the Patent Office required HEW to submit to obtain the certificates of correction, HEW represented that its "entire delay" up to the date on which it filed grantable §1.78 Petitions was "unintentional."  (*Id*. at p. 161.)  The Patent Office relied solely upon HEW's bare representations to grant the petitions and issue the certificates of correction. (*Id*.)  Notably, HEW admits it was aware of the priority defects in the '588 and '044 patents at least by November 12, 2020.  (Ex. 9, HEW's May 27, 2022 Supp. Resp. to LP's Irrog. No. 33 at p. 7, 11.)  Nevertheless, HEW delayed until January 10, 2021 before filing *anything* at the Patent Office, and delayed another four months before filing the required §1.78 Petitions. (*Id*.)  HEW attempts to demonstrate that it acted diligently in filing the §1.78 Petitions by relying on certain activities of its counsel. (*Id.*)  Specifically, for the delay between November 2020 and January 2021, HEW relies on at least five activities that HEW and its counsel purportedly engaged in, including an "investigation and identification of all potential errors to be corrected in the ['588/'044] Patent," "assess[ing] the inter-related nature of the various errors" and "*assess[ing] all possible options* to address and correct the identified errors *and select[ing]* what [HEW] believed to be *the proper procedural course forward*."[3] (*Id*. at pp. 7, 11 (emphasis added).)  Likewise, from February through May, HEW relies on various similar activities that it purportedly undertook pursuant to the advice from its new prosecution counsel.  (*Id*. at pp. 8-10, 12-13.)

HEW's allegations that it acted diligently are rooted in privileged documents and communications with HEW's counsel that HEW is withholding from LP. Indeed, HEW offered, and the Court ordered the supplemental privilege logs to be included in HEW's response to the interrogatory. (*Id*. at p. 14.)  Thus, it is indisputable that the factual basis for the activities described in HEW's response are materials listed in HEW's privilege logs.   Thus, HEW chose to place the advice and conduct of its counsel squarely at issue in response to LP's inequitable conduct claims.

---

[3] Thus, HEW's response confirms that HEW made an intentional decision to delay filing the petitions while it "select[ed]" other "procedural course[s]" at the Patent Office.  (Id. at 7, 11.)

3

*Dyson, Inc. v. Sharkninja Operating LLC* is particularly illustrative in this regard. No. 1:14-CV-0779, 2016 WL 5404605 (N.D. Ill. Sept. 28, 2016), objections overruled, No. 14-CV-779, 2017 WL 446043 (N.D. Ill. Feb. 2, 2017). There, the court explained that "[c]ontrolling Federal Circuit precedent holds that a party puts its attorney's advice 'at issue' in a case – and waives its rights to assert the attorney-client privilege – when it relies on a statement based on the advice of an attorney *in an effort to obtain a certificate of correction, and the party uses that certificate of correction to prove issues related to enforceability in a patent suit*." Id. at *3 (emphasis added); *see also id*. at *4. Likewise, here, HEW has placed its conduct and the conduct and advice of its counsel at issue with respect to filing the §1.78 petitions at the Patent Office, which are critical to the enforceability of the corrected '588 patent. Accordingly, HEW should be compelled to produce all materials related to the §1.78 petitions for the '588 and '044 patents, including the activities HEW and its counsel were purportedly engaged in from November 2020 through May 2021.

## II. HEW Should Be Compelled To Comply With The Court's Prior Order To Make RDH Available For A 30(b)(6) Deposition Related To The 2021 Testing.

Following the parties' expert reporting in 2021 pertaining to the uncorrected '588 patent, LP moved to strike certain portions of HEW's infringement and invalidity expert reports relying upon RDH's testing. (D.I. 237, 238.) In order to cure the prejudice to LP and as a basis for denying LP's motion, Judge Stark "order[ed] [HEW] to keep open the offer to have a 30(b)(6) deposition of RDH" during the reopened fact discovery period. (D.I. 280 at pp. 29-30; *id*. at p. 22 ("now that we're going to you know have a new schedule, why shouldn't I let [LP] have the discovery they want, including the deposition.").) LP served a Rule 30(b)(6) subpoena to RDH on May 3, 2022. (Ex. 10.) HEW's counsel (who also represents RDH), responded on May 17, 2022, refusing to make a witness available for *any* of the five listed topics. (Ex. 11.) During a meet and confer the following day, HEW's counsel stated that RDH would not make anyone available or "show up" for the deposition. (Ex. 12.) When faced with a motion to compel, however, HEW's counsel then proposed that LP could take the deposition, but *only during the new round of expert discovery* pertaining to the corrected '588 patent, after HEW serves its opening expert report on infringement. HEW's only explanation for this was that it *might* rely on new RDH testing materials for the corrected '588 patent, in which case LP should only be entitled to a single combined deposition of nine hours. Thus, HEW's new proposal would prejudice LP by further delaying a deposition that was ordered in December 2021 and requiring LP to take this court-ordered fact discovery in the midst of expert discovery, whilst LP is preparing its rebuttal expert reports for the corrected '588 patent. In so doing, HEW seeks to prevent LP from obtaining this critical discovery *before* LP prepares and serves its opening expert report on invalidity. Additionally, HEW's proposal would impact LP's ability to take the necessary discovery in the event LP is forced to address two entirely separate sets of testing in a single 9 hour deposition. Tellingly, HEW has not identified *any* prejudice to RDH from proceeding with this deposition now, nor any basis for why RDH is unable to appear for the deposition during the current fact discovery period.

| | |
|---|---|
| OF COUNSEL:<br>W. Edward Ramage<br>Baker, Donelson, Bearman,<br>  Caldwell & Berkowitz, PC<br>Baker Donelson Center - Suite 800<br>211 Commerce Street<br>Nashville, TN 37201<br>(615) 726-5600<br><br>Adam S. Baldridge<br>Lea H. Speed<br>Baker, Donelson, Bearman,<br>  Caldwell & Berkowitz, PC<br>165 Madison Avenue - Suite 2000<br>Memphis, TN 38103<br>(901) 526-2000<br><br>Joseph J. Richetti<br>Alexander Walden<br>Frank M. Fabiani<br>Bryan Cave Leighton Paisner LLP<br>1290 Avenue of the Americas<br>New York, NY 10104<br>(212) 541-2000<br><br>Dated:  June 8, 2022 | /s/ Kelly E. Farnan<br>Kelly E. Farnan (#4395)<br>Renée Mosley Delcollo (#6442)<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 N. King Street<br>Wilmington, DE 19801<br>(302) 651-7700<br>farnan@rlf.com<br>delcollo@rlf.com<br><br>*Attorneys for Defendant/Counterclaim Plaintiff Louisiana-Pacific Corporation* |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2022, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**BY ELECTRONIC MAIL**
Jack B. Blumenfeld
Brian P. Egan
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801

**BY ELECTRONIC MAIL**
Jeffrey D. Blake
Merchant & Gould P.C.
191 Peachtree Street N.E.
Suite 3800
Atlanta, GA 30303

**BY ELECTRONIC MAIL**
Daniel W. McDonald
Paige S. Stradley
Peter S. Selness
Merchant & Gould P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

**BY ELECTRONIC MAIL**
John T. Winemiller
Merchant & Gould P.C.
800 South Gay Street, Suite 2150
Knoxville, TN 37929

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
farnan@rlf.com