IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HUBER ENGINEERED WOODS LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-342-GBW-SRF |
| ) | |
| LOUISIANA-PACIFIC CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

At Wilmington this **30th** day of **September, 2022**, the court having considered defendant Louisiana-Pacific Corporation's ("LP") motion to compel plaintiff Huber Engineered Woods LLC ("HEW") to produce documents designated as privileged from the prosecution files of the '588 and '044 patents (D.I. 443), the associated letter briefing (D.I. 445; D.I. 458; D.I. 460; D.I. 466), and the arguments presented during the June 13, 2022 discovery dispute teleconference, IT IS HEREBY ORDERED that LP's motion to compel the production of documents logged on HEW's third supplemental privilege log is DENIED for the reasons set forth below.

**1.    Background.** HEW filed this case on February 18, 2019, and in an amended complaint filed on January 4, 2022, alleged causes of action against LP for infringement of U.S. Patent Nos. 8,474,197 ("the '197 patent"), 9,010,044 ("the '044 patent"), 9,382,713 ("the '713 patent"), 9,546,479 ("the '479 patent"); 9,689,159 ("the '159 patent"); 9,695,588 ("the '588 patent"); 9,702,140 ("the '140 patent"); and 10,072,415 ("the '415 patent;" collectively, the "patents-in-suit"). (D.I. 1; D.I. 284 at ¶¶ 30-194)  The patents-in-suit allegedly cover structural sheathing systems used in the construction of buildings. (*Id.* at ¶ 7)

2. On January 19, 2022, LP filed its answer to the amended complaint and counterclaims, which included a counterclaim for inequitable conduct based on LP's position that HEW made material misrepresentations of fact to the United States Patent and Trademark Office ("USPTO") regarding errors in the priority of the '044 and '588 patents. (D.I. 297 at ¶¶ 208, 211)

3. The inequitable conduct counterclaim alleges that HEW's prosecution counsel submitted five "Substitute Statements in Lieu of Oath or Declaration" ("Substitute Statements") on behalf of the named inventors in March 2015 for the '044 patent and in June 2016 for the '588 patent. (D.I. 297 at ¶¶ 183, 185) These Substitute Statements, which were signed by HEW employee Dave Willis, represented that the five named inventors had been contacted, but they were unable or refused to execute the requisite oaths or declarations necessary to issue the patents. (*Id.* at ¶¶ 69, 182)

4. According to LP, HEW's prosecution counsel knew the Substitute Statements were false and submitted them with the intention of deceiving the USPTO. (D.I. 297 at ¶¶ 188-93) In support of this contention, the pleading references the testimony of Mr. Willis and several of the inventors who claimed the named inventors were not contacted or informed of the need to execute the declarations. (*Id.* at ¶¶ 69, 182-93)

5. LP notified HEW of the priority defects in the '044 and '588 patents and other members of the ZIP patent family in November of 2020, when it served its supplemental invalidity contentions. (D.I. 297 at ¶¶ 212-13) Until then, HEW contends that it was unaware of the alleged defects and had no reason to correct its priority claims for the '044 and '588 patents. (D.I. 443, Ex. 9 at 6, 11)

6. On November 19, 2020, HEW's prosecution counsel filed a petition under 37 C.F.R. § 1.78 ("Section 1.78 Petition") with respect to a pending application in the ZIP patent family to accept an unintentionally delayed priority claim for the application. (D.I. 297 at ¶ 213) No corresponding Section 1.78 Petitions were filed for the '044 and '588 patents at that time.

7. In January of 2021, HEW filed Requests for Certificates of Correction to change the priority claim in the '588 and '044 patents. (D.I. 297 at ¶¶ 214, 218, 222) These requests were allegedly the culmination of the following efforts by HEW: (1) investigating and identifying potential errors to be corrected; (2) assessing the interrelated nature of those errors; (3) assessing options to correct the identified errors and selecting the proper procedural course going forward; (4) meeting with counsel for LP to resolve the priority claim issue; and (5) preparing the Requests for Certificates of Correction. (D.I. 443, Ex. 9 at 7, 11)

8. HEW's Requests for Certificates of Correction were not accompanied by Section 1.78 Petitions to accept an unintentionally delayed priority claim. (D.I. 297 at ¶¶ 214, 218) As a result, the USPTO initially denied the Requests for Certificates of Correction and indicated that HEW was required to submit Section 1.78 Petitions. (*Id.*)

9. After further evaluation, HEW submitted Requests for Certificates of Correction and corresponding Section 1.78 Petitions for the '588 and '044 patents in May of 2021. (D.I. 297 at ¶¶ 222, 224; D.I. 443, Ex. 3 at 37-38) The USPTO granted the Section 1.78 Petitions in June of 2021 and issued Certificates of Correction changing the priority of the '588 and '044 patents the following month. (D.I. 297 at ¶¶ 223, 225; D.I. 443, Ex. 3 at 38)

10. To demonstrate its alleged diligence in correcting the chain of priority, HEW voluntarily produced certain communications sent by its prosecution counsel, Mr. John Greenwald, to the last known addresses of the named inventors, asking them to submit executed

inventor declarations. (D.I. 443, Ex. 4) HEW then relied on these documents in its discovery responses served on May 27 and June 3, 2022, which outlined the steps HEW took to correct priority defects culminating in the filing of the Requests for Certificates of Correction and described Mr. Greenwald's pursuit of the inventor declarations before the Substitute Statements were drafted. (D.I. 443, Ex. 3 at 48-49; Ex. 9 at 4-14)

11. **Legal standard.** The attorney-client privilege applies to: "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012) (internal quotations omitted). The work product doctrine permits a party to withhold documents prepared in anticipation of litigation when the party can prove the relevant material: (1) was prepared by the party or its attorney, (2) in anticipation of litigation or for trial. *Novartis Pharma. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 163 (D. Del. 2001); *see* Fed. R. Civ. P. 26(b)(3)(A). The party asserting the attorney-client privilege or work product protection bears the burden to show that those doctrines apply. *See Elm 3DS Innovations, LLC v. Samsung Elecs. Co., Ltd.*, C.A. No. 14-1430-LPS-JLH, 2021 WL 4819904, at *2 (D. Del. Oct. 15, 2021) (citing *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 477-78 (D. Del. 2012)).

12. The attorney-client and work product protections are not absolute. For example, "a party can waive the right to protect privileged communications from discovery by taking an affirmative position that places the privileged communications 'at issue.'" *MKS Instruments, Inc. v. Advanced Energy Indus., Inc.*, C.A. No. 03-469-JJF, 2005 WL 8170592, at *4 (D. Del. Aug. 3, 2005). The "at-issue" exception applies when the party holding the privilege: (1) injects the communications themselves into the litigation, or (2) injects an issue into the litigation which

4

requires an examination of the confidential communications. *Wilm. Sav. Fund Soc'y, FSB v. Houston Cas. Co.*, C.A. No. 17-1867-MAK, 2018 WL 5043756, at *3 (D. Del. July 30, 2018). This exception is rooted in principles of fairness to prevent the party holding the privilege from using it as both a sword and a shield. *Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*, 707 F. Supp. 2d 463, 471 (D. Del. 2010). The party seeking production of privileged material has the burden of proving a privilege waiver. *Id.* at 469.

13. In the present case, LP contends the "at-issue" privilege waiver applies because the advice of counsel has been placed at issue in the litigation. (D.I. 458 at 1); *see Princeton Digital Image Corp. v. Office Depot Inc.*, C.A. No. 13-239-LPS *et al.*, 2017 WL 3264068, at *1 (D. Del. Aug. 1, 2017) (citing *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994)). An at-issue waiver based on advice of counsel applies not only to otherwise privileged communications between the attorney and client, but also to any of the attorney's documents reflecting the substance of the advice that would otherwise enjoy protection under the work-product doctrine. *Brigham & Women's Hosp.*, 707 F. Supp. 2d at 472 (citing *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1300-04 (Fed. Cir. 2006)). Nonetheless, a privilege waiver based on an advice of counsel defense is construed narrowly: "Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Rhone-Poulenc*, 32 F.3d at 863. For the waiver to apply, the party must seek to limit its liability by disclosing or describing the advice of counsel and by asserting that there was reliance on that advice. *Id.*

14. Generally, the law of the regional circuit applies to issues regarding waiver of attorney-client privilege, so long as they do not involve issues unique to substantive patent law. *TransWeb, LLC v. 3M Innovative Props. Co.*, 2012 WL 2878076, at *3 (D.N.J. Apr. 12, 2012);

*see Wi-LAN, Inc. v. Kilpatrick Townsend & Stockton LLP*, 684 F.3d 1364, 1368 (Fed. Cir. 2012). This District applies Third Circuit law to issues of privilege waiver based on the advice of counsel in the context of patent cases. *See Princeton Digital Image Corp. v. Office Depot Inc.*, C.A. No. 13-239-LPS *et al.*, 2017 WL 3264068, at *1 (D. Del. Aug. 1, 2017).

15. **Analysis.** LP argues that HEW placed the advice of its counsel at issue in its interrogatory responses, thereby waiving privilege with respect to its efforts to correct priority defects via Certificates of Correction for the '044 and '588 patents and its submission of Substitute Statements to the USPTO. (D.I. 458 at 1-4) For the reasons set forth below, LP has not met its burden to show that the content of HEW's interrogatory responses amounts to an at-issue privilege waiver. LP's argument for a subject matter waiver due to the production of select privileged documents is also denied because the documents which were produced did not disclose substantive legal advice or strategy.

16. *At-issue waiver regarding Certificates of Correction.* LP's position that HEW waived the privilege regarding its diligence in pursuing Certificates of Correction for the '044 and '588 patents is based largely on the following portion of HEW's response to LP's Interrogatory No. 33:

> During th[e] approximately two month period from November 12, 2020 to January 11, 2021, HEW engaged in at least the following: (1) investigation and identification of all potential errors to be corrected in the ['588 and '044 Patents] . . . ; (2) assessed the inter-related nature of the various errors; (3) assessed all possible options to address and correct the identified errors and selected what it believed to be the proper procedural course forward; and (4) met with counsel for LP in an attempt to reach a resolution of the priority claim issue; and (5) prepared seven requests for correction addressing each identified error in the '588 [and '044 Patents].

6

(D.I. 443, Ex. 9 at 7, 11) HEW's interrogatory response further alleges that it retained additional counsel after the USPTO denied the Requests for Certificate of Correction "to advise HEW regarding the alleged deficiencies and the proper course forward regarding the same." (*Id.* at 8) According to LP, this interrogatory response establishes HEW's intention to rely on the actions of counsel to refute LP's inequitable conduct counterclaim by showing HEW's diligence in correcting the priority of the '588 and '044 patents. (D.I. 458 at 1)

17. HEW's allegations of diligence are not enough to amount to a privilege waiver where, as here, its interrogatory response does not disclose, describe, or otherwise rely on the substance of its counsel's advice. *See Princeton Digital*, 2017 WL 3264068, at *1 (finding that the plaintiff's good faith was at issue, but this alone was insufficient to waive privilege). The advice of counsel is placed in issue only when "the infringer seeks to limit its liability by describing that advice and by asserting that he relied on that advice." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994). HEW's representation that it sought advice from its attorney is not enough to satisfy this standard because it does not disclose or describe the contents of that advice. *See In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (holding that "a party must *rely* on privileged advice from his counsel to make his claim or defense."); *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 2007 WL 781252, at *7 (N.D. Ill. Mar. 8, 2007) (finding no waiver based on advice of counsel where interrogatory responses did not rely on the substance of confidential communications and could be tested without disclosure of privileged material). Instead, HEW relies on a chronological recitation of its actions to demonstrate that it made continuous efforts to correct the priority defects in the '044 and '588 patents, and contacting counsel was included among these chronological steps.

18. During the discovery dispute teleconference, LP suggested that disclosure of the privileged communications is necessary to verify whether HEW pursued the course of conduct described in its interrogatory responses. (6/13/2022 Tr. at 38:9-13) But the veracity of HEW's interrogatory responses can largely be established by comparing those responses to non-privileged or publicly available documents and communications. (*See, e.g.*, D.I. 460, Ex. 1 at 4-7; D.I. 128; D.I. 130) For example, both LP and HEW should be able to confirm or refute whether they met in an effort to resolve the priority issue as indicated in the interrogatory response. (D.I. 443, Ex. 9 at 7, 11) Also, a determination of HEW's diligence in filing the Section 1.78 Petitions will primarily depend on an evaluation of HEW's public filings with the USPTO and the lapse of time itself. (D.I. 460, Exs. 1-3) Identification of privilege log entries to further establish the existence and timing of communications is consistent with the principle that, "[g]enerally, disclosure of the substance of a privileged communication will result in waiver, whereas disclosure of the mere fact that such communication took place will not." *Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*, 707 F. Supp. 2d 463, 470 (D. Del. 2010). To the extent that HEW cannot adequately substantiate its course of conduct without disclosing advice of counsel, this will negatively impact HEW's ability to establish its diligence and will not result in prejudice to LP.

19. LP identifies the Eastern District of New York's decision in *Pall Corp. v. Cuno Inc.*, 268 F.R.D. 167 (E.D.N.Y. 2010) as the case that best supports its position on at-issue waivers. (6/13/2022 Tr. at 19:10-17) In that case, the defendant asserted a counterclaim for inequitable conduct against the plaintiff during reexamination proceedings before the USPTO. *Pall Corp.*, 268 F.R.D. at 168. The plaintiff rebutted the defendant's assertions of inequitable conduct by offering the declaration of its primary prosecution counsel, which outlined counsel's

thoughts, mental impressions, opinions, and conclusions as evidence of the plaintiff's good faith during its appearance before the USPTO. *Id.* at 169. Finding that the plaintiff had waived the privilege and work product protections by affirmatively relying on the thoughts and mental impressions of its counsel, the court ordered the plaintiff to produce hundreds of documents relating to the reexamination proceedings that had been withheld as privileged. *Id.* at 169-70. The *Pall Corp.* case is distinguishable from the circumstances before this court because HEW's interrogatory responses do not disclose the thoughts, opinions, or mental impressions of its counsel. (D.I. 443, Ex. 9 at 7, 11)

20. LP also relies on *Brigham & Women's Hospital Inc. v. Teva Pharmaceuticals USA, Inc.*, 707 F. Supp. 2d 463 (D. Del. 2010) for the proposition that a plaintiff should not be permitted to use the advice of counsel as both a sword and a shield in the context of an inequitable conduct claim. (6/13/2022 Tr. at 19:18-21; D.I. 458 at 2) But *Brigham & Women's Hospital* is also distinguishable from the circumstances before the court. There, the defendant asserted an inequitable conduct claim based on the plaintiff's alleged failure to disclose material prior art to the USPTO. Unlike the circumstances in this case, the plaintiff in *Brigham & Women's Hospital* planned to defend against the inequitable conduct claim by calling its prosecuting attorneys to testify at trial regarding their good faith belief that the disclosures made to the USPTO included all material information. *Brigham & Women's Hosp.*, 707 F. Supp. 2d at 471. Also, one of the named inventors planned to testify that he relied on the legal advice he received to convey material information to the USPTO. On these facts, the court determined that the plaintiff had waived the privilege by relying on counsel's substantive legal advice to prove its good faith while continuing to withhold other privileged material. *Id.* In contrast, HEW's

9

interrogatory responses do not describe the substance of counsel's advice or confirm that HEW relied on the advice received. (D.I. 443, Ex. 9 at 7, 11)

21. Finally, LP suggests that *Aster Graphics, Inc. v. Static Control Components, Inc.*, 2018 WL 2425973 (C.D. Cal. Feb. 12, 2018) is analogous to the facts of this case. (6/13/2022 Tr. at 18:19-19:3) But the procedural posture of the case in *Aster Graphics* was not comparable to the issue confronting the court here. The *Aster Graphics* court resolved a Rule 12(b)(6) motion to dismiss, holding that the pleading adequately stated a claim for inequitable conduct. *Aster Graphics*, 2018 WL 2425973, at *2. No issues regarding privilege or privilege waivers were raised in the *Aster Graphics* decision.

22. ***Subject matter waiver based on production of prior art communications.*** LP further argues that HEW waived the privilege by producing some, but not all, communications between outside prosecution counsel and outside litigation counsel regarding its efforts to obtain the Certificates of Correction. (D.I. 458 at 3) According to LP, these communications disclose strategic details and go beyond transmitting office actions; therefore, HEW should be compelled to produce all documents pertaining to the same subject matter. (*Id.*; 6/13/2022 Tr. at 39:14-40:1) In support of its position, LP refers generally to 92 pages of emails attached in two exhibits to its letter submission. (D.I. 458, Exs. 2, 4)

23. LP has not met its burden to show that HEW waived the privilege by producing the communications. *See Brigham & Women's Hosp.*, 707 F. Supp. 2d at 469. To find a privilege waiver regarding undisclosed communications, there must first be a disclosure of privileged information regarding the same subject matter. *See* Fed. R. Evid. 502(a); *Shionogi Pharma, Inc. v. Mylan Pharm., Inc.*, C.A. No. 10-1077, 2011 WL 6651274, at *3 (D. Del. Dec. 21, 2011) ("[T]he deliberate disclosure of privileged or protected information may lead to the

10

compelled disclosure of additional privileged or protected information, if they concern the same subject matter and ought in fairness to be considered together."). Here, LP has not established that the communications disclosed by HEW were privileged in the first instance.

24. The majority of the communications cited by LP are emails confirming the status of filings with the USPTO. (*See, e.g.*, D.I. 458, Ex. 2 at FAEGRE0000200, FAEGRE0001437) Communications of this type contain no legal strategy or substantive advice and are therefore not privileged. Other communications involve outside prosecution counsel seeking guidance from USPTO employees. (*See id.*, Ex. 4 at FAEGRE0000675-76) These communications are not privileged because they were not made between privileged persons, and any advice derived from these communications came from USPTO employees instead of counsel. LP's reliance on *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1357-63 (Fed. Cir. 2017) is misplaced because the subject matter waiver in that case was based on the disclosure of select documents containing substantive legal analysis regarding the meaning of claim language and whether to disclose certain references to the USPTO. Because the communications at issue here did not reveal the legal analyses or strategies of counsel, the disclosure of the communications does not support a privilege waiver extending to all documents regarding the same subject matter.

25. *At-issue waiver regarding substitute statements.* LP cites HEW's response to Interrogatory No. 37 in support of its position that HEW put the advice of its prosecution counsel at issue with respect to the inventor declarations. (D.I. 458 at 3) HEW's response to Interrogatory No. 37 states that its prosecution counsel, Mr. Greenwald, sent letters to the named inventors at their last known addresses asking them to sign inventor declarations in support of the application resulting in the '044 patent. (D.I. 443, Ex. 3 at 48) The interrogatory response explains that Mr. Greenwald tracked the delivery of the letters but received no responses to the

11

letters, which prompted him to prepare and file Substitute Statements signed by HEW employee Dave Willis. (*Id.* at 49)

26. HEW's description of Mr. Greenwald's role in contacting the named inventors to obtain inventor declarations, preparing the Substitute Statements, and filing the Substitute Statements with the USPTO does not rise to the level of putting advice of counsel at issue. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (explaining that the advice of counsel is placed in issue only when "the infringer seeks to limit its liability by describing that advice and by asserting that he relied on that advice."). Because HEW did not disclose Mr. Greenwald's legal analysis or indicate an intention to rely on Mr. Greenwald's advice in support of its diligence argument regarding the Substitute Statements, LP has not met its burden to show that HEW waived the privilege.

27. ***Subject matter waiver based on production of communications to inventors.*** LP also contends that HEW waived the privilege regarding the subject matter of the inventor declarations and Substitute Statements by producing communications Mr. Greenwald sent to the named inventors in pursuit of the inventor declarations. (D.I. 458 at 4) These letters simply ask the named inventors to execute inventor declarations for the continuing patent application. (D.I. 443, Ex. 4) They confirm that executing the declarations will not "create an attorney-client relationship between you and my firm—we represent Huber, not you. An executed Declaration is merely a legal formality that is required of patent applicants by the USPTO." (*Id.* at JG0000009) Under the standard set forth in *Al-Turki v. Fenn*, this production does not amount to a privilege waiver because the information contained in the correspondence was not viewed as confidential and did not reflect advice given by counsel. 1995 WL 231278, at *3 (S.D.N.Y. Apr. 18, 1995).

28. In support of its position that the production of this correspondence amounted to a privilege waiver, LP relies on *Sperry v. Florida*, 373 U.S. 379 (1963) and *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000). (6/13/2022 Tr. at 10:20-11:9; D.I. 458 at 4) Neither case compels a conclusion that HEW waived the privilege here by producing Mr. Greenwald's correspondence to the inventors. First, *Sperry* did not address a privilege waiver issue. The matter before the Court was whether a practitioner licensed to practice before the USPTO engaged in the unauthorized practice of law in Florida, a state in which he was not barred. *Sperry*, 373 U.S. at 381-82. The Supreme Court's conclusion that "the preparation and prosecution of patent applications for others constitutes the practice of law" referred specifically to counsel's obligations to advise clients on the patentability of their inventions, draft patent applications, and prepare written arguments on patentability in support of amendments. 373 U.S. at 383. Each of the enumerated obligations of counsel in *Sperry* pertained to substantive legal analysis, as opposed to the ministerial task of collecting signatures on a form. *See RSA Protective Techs., LLC v. Delta Sci. Corp.*, 2021 WL 4978458, at *1 (C.D. Cal. Sept. 28, 2021) (noting that the USPTO addressed a patent application filed without an inventor declaration and filing fee by sending a Notice to File Missing Parts, as opposed to a substantive rejection).

29. In *Spalding*, the Federal Circuit determined that the invention record submitted by the inventors to the legal department was privileged because it communicated prior art and technical information for the purpose of obtaining legal opinions on patentability. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d at 805-06. In contrast, Mr. Greenwald's correspondence to the named inventors was not a communication made to an attorney for the purpose of obtaining legal advice. The prior art and technical information communicated in *Spalding* is not comparable to

the inventor declarations transmitted by Mr. Greenwald, which sought only a signature and required no legal analysis. *Id.*

30. **Waiver of work product protection.** Finally, LP contends that HEW's waiver extends to work product materials because the analysis and mental impressions of HEW's counsel are relevant to the representations that were made to the USPTO. (D.I. 458 at 5) For the reasons previously stated at ¶¶ 16-18 and 25-26, *supra*, LP has failed to establish that HEW put the advice of its prosecution counsel at issue. Therefore, LP's reliance on *In re EchoStar Communications Corp.* does not support a conclusion that work product protection has been waived. *See In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302-03 (Fed. Cir. 2006) (explaining when work product protection may be waived in the context of an advice of counsel defense).

31. **Conclusion.** For the foregoing reasons, LP's motion to compel the production of all materials related to the prosecution of, and post-issuance filings in, the '588 and '044 patents is DENIED. (D.I. 443)

32. Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Opinion should be redacted, the parties shall jointly submit a proposed redacted version by no later than **October 7, 2022**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the

parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within thirty (30) days of the date the Memorandum Order issued.

33. This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to five (5) pages each.

34. The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge